## J. B. TURNER v. THE STATE.

### No. 1488. Decided May 25, 1898.

**1. Theft of Cattle—Evidence—Certificate of Marks and Brands Recorded Subsequent to the Theft—Charge.**

A certificate of registration of marks and brands, recorded subsequent to the alleged theft, is admissible in evidence, not for the purpose of proving ownership, but to be used as a circumstance in connection with other circumstances to prove the identity of the alleged stolen animal. Such certificate is no proof of title, and the court in such cases should guard the jury as to such evidence so as that they would not be liable to regard it as proof of ownership of the stolen animal.

**2. Same—Record of Marks and Brands—When to Be Made—Effect of Record.**

A recorded brand to be evidence of ownership must have been recorded anterior to the alleged theft, and even such a recorded brand is but prima facie proof of ownership, subject to be rebutted.

**3. Same—Only One Brand Can Be Recorded and Used—Use of More Than One—Effect of.**

Under our statutes, no person is allowed to use more than one brand, which shall be recorded. Rev. Stats., arts. 4922, 4923. And it is made a penal offense to use more than one brand. Penal Code, art. 932. He may, however, purchase the marks and brands of others, and the sale and transfer can be noted on the record of original marks and brands in his name. Rev. Stats., art. 4942. But where a party owns and uses more than one such recorded brand, the same can only be regarded as a flesh mark upon the animal so branded, and can be used, not as evidence of ownership, but simply as evidence to establish the identity of the animal.

**4. Improper Argument of Counsel—Practice.**

On a trial for theft, where defendant had not put his character in issue, and the prosecuting attorney commented upon the fact that two of his neighbors were on the grand jury which found the indictment, that they knew him and they brought in the bill, and the court refused to reprimand counsel and to instruct the jury to disregard such argument, though requested by defendant to so instruct them, Held, error.

APPEAL from the District Court of Archer. Tried below before Hon. GEORGE E. MILLER.

Appeal from a conviction of theft of one head of cattle; penalty, two years imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*L. H. Mathis, Davis & Garnett, S. B. Garret,* and *Potter & Potter,* for appellant.—The third assignment complains of the action of the court in admitting in evidence, over appellant's objection, the recorded mark and brand of E. P. Davis, the alleged owner of the cattle, because the same was not recorded until March 1, 1898, which was only two days prior to the finding of the indictment, and long after the commission of the offense, if any was committed. All the evidence showed that the animals claimed to have been stolen were branded 6 on the left shoulder and hip. The brand of E. P. Davis as recorded is 6 on the left side and hip.

The eighth assignment of error is in substance that the court erred in refusing to give in charge to the jury the second instruction requested by defendant as follows: "The defendant requests the court to charge the jury that the brand of E. P. Davis, figure 6 on left side and left hip, which has been recorded in Archer County since the commission of the offense, if any was committed, is not sufficient alone to prove ownership," because there was no other proof of ownership outside of said brand, and because the proof showed that if there had been a figure 6 on the alleged stolen cattle, the same was on the shoulder and hip, and not on the side and hip as set out in the recorded brand.

The ninth assignment of error is that the court erred in refusing to give the defendant's requested instruction number 3, as follows: "The recorded brand of 6 on the left side and 6 on the left hip introduced by the State as the brand of E. P. Davis can only be considered by you as a circumstance in the case along with the other evidence in the case to determine whether the alleged stolen animals were the property of said Davis, and is not sufficient in itself to prove ownership."

As shown by the third assignment, appellant objected to the introduction of E. P. Davis' recorded brand because recorded long after the commission of the offense, if any, and because the cattle charged to have been stolen were shown by the evidence to be branded on the left shoulder and left hip, and were not branded 6 on the left side and left hip, as called for in E. P. Davis' recorded brand. And further, appellant objected to the introduction of said recorded brand, because the very record in which said recorded brand appeared showed that E. P. Davis had various other recorded brands, whereas the Revised Statutes, article 4921, provides that no person shall use more than one brand.

Article 4930, Revised Statutes, provides that no brands except such as are recorded by the officers named in this chapter shall be recognized in law as any evidence of ownership of the cattle, horses, or mules upon which the same may be used. We are aware that this court has in several opinions held that a brand recorded subsequent to the commission of the alleged offense is admissible in evidence; but we do not think that this court has gone to the length of holding that such brand so recorded is of itself sufficient to prove the ownership of the property charged to have been stolen.

When this offense, if any, was committed, E. P. Davis had no brand on record. He had not by making public his brand given notice to anyone of his evidence of ownership, so as to guard them against purchasing from persons other than himself cattle bearing the 6 brand. His right, if any, to such brand of cattle existed solely and only in parol. Now, after the alleged offense, with the knowledge that his ownership of said cattle is questioned, he appears before the clerk of Archer County, and by a few words spoken, reduced his parol evidence of title to that of a record title. This change in his evidence of ownership was purely ex parte. And it occurs to us that as an original proposition such record could only be evidence against parties dealing with said cattle subsequent to the record of the brand, and ought to be no evidence whatever as affecting those dealing with the cattle prior to the registration. In one of the opinions upon this question, the court likens the record of the brands subsequently recorded to the record of a bill of sale after the commission of the offense. We do not think these instances touching the question are analogous. If E. P. Davis had had in his possession an unrecorded bill of sale to these cattle, and they had been stolen, he could have recorded his bill of sale at any time, and its record would have been admissible upon the loss or destruction of the original; and, besides, if his right to the cattle had been acquired by a bill of sale the evidence of his right existed in writing, and not in parol, as did Davis' evidence of title, until his brand was recorded.

We respectfully submit the following as analogous to the case at bar so far as Davis' evidence of right to the cattle under his subsequently recorded brand is concerned: Suppose, upon the trial of this case, it had been shown (as in fact it was) that the cattle, if stolen, were stolen in November or December, 1896, and that upon the trial of the case the only evidence of ownership of Davis had been a bill of sale from John Doe, dated March 1, 1898. It is clear under the supposed case that Davis' title by virtue of the bill of sale would only date from March 1, 1898, and could not relate back to November, 1896. Evidence of title affecting third parties can not be manufactured. Article 4930 evidently means that until the brand is recorded it is not evidence of ownership. And the rules of law touching the making of evidence precludes any other construction than that the subsequent record of the brand is not evidence of ownership against anyone touching the cattle prior to such record. We do not think it is the law that the alleged owner of the cattle in this case could by his own ex parte act convert his title resting in parol into an incontestible record title, and make such title relate back more than a year. Yet this was permitted to be done in this case. It is regarded generally by the people that a recorded brand is positive and absolute evidence of ownership of all animals bearing the brand.

In view of all this, the court, upon admitting the evidence of said subsequently recorded brand, should have given to the jury the second or at least the third special instruction requested by the defendant; and it was error for the court to refuse them. The brand subsequently recorded

was only a circumstance to be considered by the jury along with all the other evidence in the case, in determining whether Davis was the owner of the cattle at the time of the alleged theft. We ask the court to re-examine the question as to the admissibility of a subsequent recorded brand for any purpose. As we understand it, this court has held that such subsequent recorded brand is not of itself sufficient to prove owner-ship, but that it is a fact to be considered by the jury along with the other evidence of ownership; and the charges asked are in line with this view. In the absence of such special instructions the jury regarded the subsequent recorded brand as incontestible evidence of ownership in E. P. Davis. There was no evidence of ownership outside of this subse-quent recorded brand, the record of which was ex parte, without the ap-pellant's consent, manufactured after the alleged offense. Priesmuth v. State, 1 Texas Crim. App., 481; Spinks v. State, 8 Texas Crim. App., 125; Coombes v. State, 17 Texas Crim. App., 266; Groom v. State, 23 Texas Crim. App., 87.

To the effect that the brand on the animal, to prove ownership, must have been on that part of the animal corresponding with that part indi-cated by the recorded brand, see Myers v. State, 24 Texas Crim. App., 340; Massey v. State, 31 Texas Crim Rep., 91.

As to error based upon the improper argument of counsel (for which see opinion) they cited Railway v. Johnson, 23 S. W. Rep., 826; Wichita Valley Mills v. Hobbs, 23 S. W. Rep., 923; Railway v. Greenwood, 21 S. W. Rep., 559; Exon v. State, 33 Texas Crim. Rep., 461; Butler v. State, 27 S. W. Rep., 128; Bice v. State, 37 Texas Crim. Rep., 38; Seals v. State, 38 S. W. Rep., 1006; Fuller v. State, 30 Texas Crim. App., 559; Tweedle v. State, 29 Texas Crim. App., 586; Clarke v. State, 23 Texas Crim. App., 260; Laubach v. State, 12 Texas Crim. App., 583; Brunet v. State, 12 Texas Crim. App., 521; Conn v. State, 11 Texas Crim. App., 390; Pollard v. State, 33 Texas Crim. Rep., 197.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State. [No briefs found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of the theft of one head of cattle, and his punishment assessed at confinement in the peni-tentiary for a term of two years, and he prosecutes this appeal.

The evidence on the part of the State tended to show that the alleged stolen animal was taken in November or December of 1896, or in Janu-ary of 1897. The proof as to the ownership of the head of cattle in ques-tion in the prosecutor, E. P. Davis, consisted in the following facts: That said Davis lived in Throckmorton County; that he had a ranch of about 95,000 acres in Throckmorton and Young counties; that he owned a large number of cattle; and that he had several cattle brands, and, among others, gave the brand "6" on the left side, "6" on the left hip, mark crop off of right ear, and underbit in the left ear; that sometimes he had cattle to stray or go into Archer County. Five head of steer cattle

bearing his said mark and brand were seen in the L. M. pasture, in Archer County, some year or two before the alleged theft. The particular head of cattle alleged to have been stolen was one of these, designated as a "brindle steer." In the fall of 1896 it was shown that the brands and marks of at least two of said five head of steers, including the brindle one, had been changed by burning the "6" and making a "B" of it, and by placing a cross between the two "B's." The mark had been changed by cutting out the under bit in the left ear, and making an underslope thereof. The evidence abundantly showed that the brand of the brindle steer had been thus changed. The weight of the evidence was to the effect that the brand "6," instead of being on the left side of the animal, was on the left shoulder, though one or two witnesses state that the brand was just behind the left shoulder. The prosecutor testified that his mark and brand were as above stated, and that he had sold no cattle in that county. The testimony tended to show that appellant sold said brindle steer to Mathers and Routzahan in the latter part of 1896 or the early part of 1897, and that at that time the brand and mark had been changed, and the animal dehorned. Webb bought the animal from Routzahan, and he was cut out of his herd by direction of Chesher, who represented the cattle association. A number of circumstances were introduced in evidence showing fraud on the part of appellant. As proof of ownership, the State introduced a certified transcript of the registration of the mark and brand of Davis, the prosecutor, recorded in Archer County, on the 1st of March, 1898. The record shows as follows:

Certificate of Registration of Marks and Brands.

| No. | Name of Owner. | Place of Residence. | Mark. | Brand. |
|---|---|---|---|---|
| 833 | Davis, E. P.............. | Throckmorton, Tex....... | ⃝ | 6 |

| Location of Brand. | Date of Registration. |
|---|---|
| Left side and left hip.................. | March 1. 1898. |

The theory of the defense, which he supported by evidence, was to the effect that he bought the animal in question, with four others, from a stranger, who was driving a herd of three or four head through that county in the fall of 1896; that the animals then bore the mark and brand found on them when sold by appellant, to wit, "B" on left shoulder, cross on left side, and "B" on the left hip; and that they were also then dehorned. It seems to have been conceded on the trial that the brands had been changed by burning the "6's" into "B's." Appellant, however, testified that he did not discover the same at the time he bought them or afterwards.

Appellant objected to the introduction of the certified record of marks

and brands of E. P. Davis—"First, because upon its face the mark and brand appeared to have been recorded after the commission of the alleged offense; second, because none of the cattle mentioned by any of the witnesses in the case as having ever been in the possession of the appellant ever had the two '6's' on them in the place described in the recorded brand; and, third, because there were other marks and brands on record, both in Archer and Throckmorton counties, Texas, purporting to be E. P. Davis' marks and brands. And in that connection he introduced a certified copy of the registration of marks and brands, showing that prosecutor gave other marks and brands."

The question as to the admissibility of a brand recorded after the date of the alleged theft has been before this court a number of times. See Priesmuth v. State, 1 Texas Crim. App., 481; Spinks v. State, 8 Texas Crim. App., 125; Coombes v. State, 17 Texas Crim. App., 266; Groom v. State, 23 Texas Crim. App., 87. These decisions appear to hold that such certificate of registration of brands, though recorded subsequent to the·alleged theft, is admissible in evidence, not for the purpose in itself of proving ownership, but to be used as a circumstance, in connection with the other circumstances, to prove the identity of the alleged stolen animal. In other words, we understand the effect of the decisions to be that this certified copy can be offered, in connection with the other facts, merely to show a flesh mark on the animal in question. This being true, we can see no legitimate purpose in offering the recorded brand at all, as parol proof can be made of the certain flesh marks on the animal regardless of the record of the brands. From this point of view, we do not see what useful purpose the introduction of a subsequent recorded brand would serve in a case. However, we agree with the decisions to the effect that such subsequent record of the brands is no proof of title to property which had been previously stolen. Article 4930, Revised Civil Statutes, provides that "no brands, except such as are recorded by the officers named in this chapter, shall be recognized in law as any evidence of ownership of the cattle, horses, or mules upon which the same may be used." This statute would seem to construe itself, and to clearly convey the idea that an unrecorded brand shall not constitute evidence of ownership. Now, if the recorded brand shall be evidence of ownership, when must it be recorded? Obviously, it occurs to us, anterior to the alleged theft. The act of making a record of a brand is entirely ex parte. All that is required to be done by a person desiring to register his brand is to go to the clerk, and inform him what brand he wishes to record; and if it does not conflict with some recorded brand, and he then pays the clerk 25 cents, the registration is complete. If this could be done subsequent to the taking of cattle claimed by him, he would appear to be authorized by an ex parte act to constitute title in himself after the taking. He may have never used the brand before, but, subsequent to the taking, he could adopt the brand found on the animal, and by this means fabricate testimony of his ownership. We do not think this is permissible; and we hold that the recording of his brand after the alleged taking of property

claimed by him affords no proof of ownership, and his claim to the brand stands on no higher plane than parol evidence of the fact would furnish. We would not be understood as holding that a recorded brand prior to the taking constitutes indisputable evidence of title or ownership, but is merely prima facie proof thereof, subject to be rebutted. We do not hold, however, that the admission of the brand in evidence of E. P. Davis, recorded about a year after the alleged taking, would of itself constitute reversible error; but, under the circumstances of this case, it became absolutely necessary for the court to guard the jury as to the effect of this recorded brand; otherwise, they would be liable to regard it as proof of ownership in Davis of the head of cattle in question. Therefore, it was necessary for the court to give the special requested instructions of the appellant on this subject, said instructions being in line with the authorities above cited. Of course, if appellant bought said head of cattle after it had been stolen and the brand changed, the jury should have acquitted him of theft on this ground. But the theory of the State was that he had stolen the animal while it was branded in the alleged brand of the prosecutor, and that he afterwards changed said brand, so that the ownership of the animal was a very material issue on the trial, and this ownership could not be established by an unrecorded brand or a brand recorded after the date of the alleged taking; and, as this was the State's evidence of ownership, the jury should have been very carefully instructed on this point. We also think that inasmuch as the testimony tended strongly to show that the "6" was on the left shoulder, and not on the left side of the animal, the jury should have been instructed on this subject.

Appellant also contends, as a reason why said certified record of the marks and brands of Davis should not have been admitted in evidence, that the record of marks and brands in both Throckmorton and Archer counties showed that said Davis has recorded several other marks and brands besides that given as being on the animal in question. The statutes on this subject appear to apprehend that no person shall use more than one brand; and it is further prescribed that his brand shall be recorded. See articles 4922 and 4923, Rev. Civ. Stats. To emphasize this, the Criminal Code makes it a penal offense for a person to use more than one brand. See article 932, Penal Code. Now, if a recorded brand only is evidence of ownership, and a party can use only one brand, this would negative the idea that he could use other brands. We note in this connection that article 4942, Revised Civil Statutes, authorizes persons to purchase the marks and brands of others by bill of sale, and authorizes such sale or transfer to be noted on the record of original marks and brands in the name of the vendee or purchaser. In such cases it would seem that one person can own a number of marks and brands by purchase, but in order to reconcile these articles, while he can purchase other marks and brands, he could use and keep up but one as his own. We do not know what may have been the object of the Legislature in authorizing a person to use but one brand, but, unquestionably, the Legislature

has so enacted, and we know of no principle which would authorize us to hold such an act void. Hence the question arises in this case, what effect would the fact that Davis had a number of marks and brands recorded have on the use of one of said marks and brands as evidence of title in him? Would the fact that he had a number of brands recorded in a given county vitiate the use of the record of one of such marks and brands as evidence of title in him? We believe that this would be the effect of his having and using more than one recorded brand, and that said brands could be regarded as no more than flesh marks on the animals so branded, which could be used, not as evidence of ownership, in connection with the recorded brand, but simply as evidence to establish the identity of such animals. This, in connection with other proof, might, of course, show ownership.

On the trial, appellant did not, by any evidence, put his character in issue; yet the attorneys for the State, being private prosecutors, dwelt upon this matter. A bill of exceptions shows that F. E. Dycus stated in his opening argument before the jury as follows: "The defendant is here with his friends on the outside of this bar. You should not consider that. You should try him just like you would try a boy who has been raised in the slum of the street, and knew nothing of a good life, but had been raised in crime. The defendant has friends here, and has friends in this county; but remember, gentlemen, that his neighbor Bill Mann and his neighbor Jim Floyd were on the grand jury that found this indictment. They knew him. They were his neighbors, and they brought in the bill," —to which argument of counsel the defendant excepted as unfair and prejudicial, and requested the court to instruct the jury to disregard such argument. The court overruled the objection, and appellant excepted. And it is also shown that Carrigan, another private prosecutor, in the closing argument, stated, "If the defendant had a good character, why did he not bring his neighbors here, and let them testify to his good character, and why were his brothers not placed upon the stand?" to which argument defendant objected, on the ground that the good character of the defendant had not been put in issue. Appellant also, by a written motion, requested the court to instruct the jury in regard to said argument. The court refused to do this. In explanation, the court says: "That, in their argument, counsel for the defendant stated to the jury that the defendant had never before been charged with a violation of law, so far as the record showed, and that his reputation must be good, for it had never been such as to subject him to a criminal prosecution, and the argument complained of was in direct answer to the argument of counsel for defendant." This, possibly, may have been sufficient justification so far as the remarks of Attorney Carrigan are concerned; but this did not justify the remarks of Attorney Dycus. These were made prior to any argument by the counsel for defendant. They were not authorized by anything in the record, and were calculated to prejudice appellant before the jury; especially that part with reference to what two members of the

grand jury, the neighbors of appellant, had done with reference to bringing in the bill against appellant. If this matter had been offered in evidence, the court would have promptly excluded it. As it was not in evidence at all, and discussed before the jury, the least that the judge could have done was to promptly reprimand counsel, and to instruct the jury to wholly disregard said remarks. But this he failed to do. This, in our opinion, was error. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.