### John Robbins v. The State.

#### No. 2953.    Decided November 23, 1904.

#### 1.—Rape—Continuance—Diligence—Materiality of Testimony.

Where upon first application for continuance, the defendant set out therein that he had placed a subpœna in the hands of the sheriff, a day or two after the indictment was found, which was returned unserved; that the witness resided in the county of the trial, but was temporarily absent and his whereabouts unknown after diligent inquiry; that the testimony of the absent witness would show that prosecutrix threatened to send defendant to the penitentiary, for sending away her brother, the motion should have been granted, as the State's case mainly rested on the testimony of prosecutrix; and this although the testimony of the absent witness was partly cumulative.

#### 2.—Charge of the Court—Extraneous Crimes.

Where the evidence showed that appellant had been previously charged with theft of cotton, upon his trial for the crime of rape, and that the prosecution for such theft had been dismissed, a charge of the court limiting the evidence of other crimes against defendant of which he had been convicted to his credibility as a witness was erroneous in not also properly limiting the evidence about the cotton theft; especially in view of the action of the jury in discussing extraneous matters with reference to this transaction.

#### 3.—Misconduct of Jury—Discussion of Extraneous Matter.

Where the jury in their retirement to consider their verdict on a trial of defendant for rape heard the statements of one of their fellows with reference to a charge against defendant of theft of cotton, in addition to and outside of the evidence in the case that such charge had been preferred, and in the absence of an instruction of the court properly limiting such evidence, such conduct of the jury was reversible error.

#### 4.—Evidence—Family Bible—Identification.

Where there was no issue as to prosecutrix's age of consent in a trial for rape, and there was other testimony that she was under 15 years of age, there was no error in the action of the court in admitting the family bible in evidence without sufficient identification, and afterwards instructing the jury to disregard such testimony.

#### 5.—Argument of Counsel—Extraneous Matter—Reversible Error.

Where State's counsel in his argument to the jury departed from the record in a case of rape, and alluded to other noted rape cases, and presented a suppositious case of theft personating certain known parties in the county of the trial who were indicted for theft, and connecting defendant with either the theft or the receipt of the stolen property; and suggesting that the officers had seen him under conspicuous circumstance with the prosecutrix, without evidence in the record to support it; characterizing him as a bestial, brutal character; suggesting to the jury that defendant had been in the penitentiary and acquired the practice of sodomy, without evidence to support it, and criticising the decisions of the

courts of last resort for confining proof in rape cases to the transaction charged, it was reversible error, although the court had instructed the jury to disregard much of said argument and appellant had simply reserved exceptions without requesting special instructions.

### 6.—Same—Trial by Jury Bulwark of Free Institutions.

Fair trial by jury is the bulwark of our free institutions, and the courts as its guardians are pledged to maintain its purity and integrity, and it will not be permitted that a citizen charged with one offense be tried for another, much less will it be tolerated that other offenses outside of the record, may be lugged into the argument to the prejudice and injury of the accused.

Appeal from the District Court of Williamson. Tried below before Hon. V. L. Brooks.

Appeal from a conviction of rape; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant has reached the reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape and his punishment assessed at confinement in the penitentiary for a term of fifteen years; hence this appeal.

Appellant made a motion for continuance on account of the absence of John Hamilton. The diligence used was the issuance of a subpœna a day or two after the indictment was found and placing the same in the hands of the sheriff, which was returned unserved. It is alleged in the application that John Hamilton was a resident of Williamson County, but was temporarily absent, and his present whereabouts was unknown to appellant though diligent inquiry had been made to ascertain same. This we believe was sufficient diligence. It is alleged that appellant expected to prove by him that he had heard the prosecutrix on divers occasions, since her brother was sent away from the home of appellant, state that she (prosecutrix) would get even with defendant for sending her brother away, if she had to swear defendant into the penitentiary or break his neck. Was this testimony material? We believe, under the peculiar circumstances of this case it was. The State's case mainly rested on the testimony of the prosecuting witness Lorinda Chamblee, and her animus or motive became material in the case. Appellant proved the same fact by other witnesses, but this testimony related to other occasions and was not in effect cumulative. But even if it was, this being the first application for continuance it would make no difference. Appellant was entitled to the evidence of this witness.

In the motion for new trial appellant complains of the action of the court in instructing the jury with reference to proof of other extraneous crimes, and for the purpose they could be used by the jury. The charge is substantially as follows: "Certain testimony has been admitted before you tending to show that defendant has been charged with and convicted of other crimes than the one for which he is on trial. You may

consider this testimony on the issue of the credibility of the defendant as a witness, and for no other purpose." The objection urged is, that there was evidence before the jury that appellant had been charged with another offense, to wit: theft of cotton, for which he was not convicted— the prosecution having been dismissed; and that this evidence ought to have been properly limited, as was other testimony of this character. We think this contention is correct, especially when we view the action of the jury in regard to this theft of cotton transaction.

The motion for new trial complains of the misconduct of the jury hearing other testimony regarding this transaction. The affidavits of some of the jurors show that the matter was mentioned in the jury-room before the jury returned their verdict. One of the jurors stated to other jurors in the jury room, that since this matter came up, he remembered it, and that defendant was caught up with in the theft of the cotton by the owner of the cotton putting scraps of marked paper in the cotton and when the cotton was carried to the gin the scraps of paper were found in it and the cotton thus identified. This character of testimony delivered in the jury room appears to us to intensify the court's error in not limiting the effect of the cotton transaction, and of itself shows misconduct of the jury in the jury room in relation to this cotton transaction,—being other facts in connection therewith which tended to show that although the case had been dismissed that appellant was guilty of that offense.

The action of the court with reference to the family Bible was not, under the circumstances, reversible error. A Bible was admitted to show the record of the age of the prosecutrix, Lorinda Chamblee. This Bible was not sufficiently identified as the family Bible of the parents of the prosecutrix, and was therefore inadmissible; and the court properly excluded it, besides instructing the jury not to regard it, though introduced in evidence. Besides, no issue was made by defendant as to the age of the prosecutrix: other testimony of the State showing that she was under 15 years of age, not being controverted.

A number of bills of exception were reserved to the argument of the district attorney before the jury. Appellant's third bill of exceptions was corrected by the judge, and we copy from the judge's explanation, as follows: "The district attorney said: 'The defendant's wife, in contradiction of the prosecuting witness, says that the girl said when defendant was arrested that "John didn't do anything to me, somebody has put a job up on him."' Who will defendant say put a job up on defendant in this case? Surely not the little 13-year-old girl who is the injured party? Who then? I realize that there are many cases where that may be true. Such was said to be true of the Jay Owens case, where it was charged that Jay Owens' wife, a woman of mature years, conspired with her daughter and taught her the story. Such was said to be true of the Draper case from Round Rock, where a man travelling with a young girl from California to Texas was charged with assault upon the girl, and it was in that case charged that older and

wiser heads than the prosecutrix in that case taught the little girl her story."

Appellant's bills numbers 4 and 6 are along the same line. It appears to have been a matter of controversy between the State and defendant, as to how the offense became known. Appellant's counsel in his cross-examination of the prosecutrix, showed that she had not told any one about the transaction of which appellant was being tried, prior to his arrest. The district attorney in his argument, according to appellant's bill, treated this matter, as follows: "Gentlemen, I will show you why we did not show you who caused the arrest of the defendant: The Court of Criminal Appeals has recently held that, in a trial of a case of this kind, the State must confine itself to the one act alleged in the indictment. I say that the Court of Appeals is wrong, but they say it is the law, and I must be governed by what they say. (Here the district attorney turned to counsel for defendant, and dramatically exclaimed) 'Your objection to my criticism of the Court of Appeals may be well taken, but I will say that, formerly, by a long line of decisions reaching back to the beginning of the history of Texas, that court had held that the State could prove more than one act, but now they confine the State to the one act.' Suppose that this defendant was seen by John Hamilton, or the constable, John Sudduth, at night time, coming from the brush with this little girl, with her little drawers in his hand; suppose that the whole neighborhood was talking about his conduct toward her, for more than a year; suppose that this had been going on for a long time; suppose that this defendant had commenced to gratify his brutal and beastly passion with this little girl, long before he could possibly penetrate her sexual organ—how could I have shown this, when the Court of Appeals limits me to proving one transaction? Suppose he practiced upon her tender person the detestable and damnable crime against nature, how could I have shown it?" The court explains this bill by stating: "Mr. Nunn, counsel for defendant, had stated to the jury in argument, that he could and would show that the prosecutrix had lied in reference to a material matter, in this: that she had stated that she had never told any one about what defendant had done to her, until after he was arrested, and that as far as she knew, no one but her and the defendant up to that time knew about it; that the jury knew that the defendant had not told it, or the district attorney would have proved a confession, and that there was no other way for it to get out. And, therefore, the girl must have told it; and therefore had lied in this particular, and he challenged the district attorney to explain how the State had obtained its information, as to the commission of the crime and what that information was. The district attorney in his closing argument repeated the above language, and said: 'In answer to said challenge, I will illustrate to you some of the ways in which the State may have obtained its information. I am not permitted to tell you that it was obtained in a given way, and you are not to consider my illustrations as facts. Suppose there had been stealing out there where

the defendant lives, and defendant was suspected of being connected with or receiving the stolen property. Suppose Sugar Carlisle, Dave Brown and John Hamilton had been stealing and some one was receiving the stolen property—could you think of a better man for the officers to watch? Suppose that while watching the house of defendant, they saw certain actions of defendant, such as coming from the brush at night with the little girl, and she was fixing her underclothes, and circumstances exciting grave suspicion. Suppose John Robbins had made a confession to John Hamilton and he has left the State and cannot be reached by process. I might make many illustrations, but these can and must not be considered as proven facts. I would not have indulged in these illustrations, but for the pointed and definite challenge of defendant's counsel. They ask why I don't prove any other facts than the ones in evidence, if I have them. The reason is, because the Court of Criminal Appeals of this State have wrongfully in my judgment held that you can only prove one act.' (Here defendant's counsel objected, because district attorney was criticising the Court of Criminal Appeals.) The district attorney said: 'For once I am wrong; my language is a criticism of the higher court, but I did not so intend it, and ought not to have done so. I only meant that for many years, where there were a number of rapes committed by a defendant on the prosecutrix, the court held that you could prove them all, and then elect before the argument begun which you relied upon for conviction, but the decisions laying down that rule have been reversed, and now you can only prove one act and facts corroborating the commission of one act, and I would be afraid to prove any of the facts I have supposed to exist in my illustration, if they did exist, for fear of reversing this case, if you convict defendant.' "

It will be noted that only that portion of the argument of State's counsel relating to sodomy, as contained in bill number 5 was excluded by an instruction of the court to the jury not to consider the same. Bill number 5 is in the following language: "The district attorney in his closing argument to the jury used the following remarks: 'Suppose this defendant had carnal knowledge of this little girl in the natural way, or it may have been in the anus, or it may have been in that damnable and detestable way known to the law as that unnamable crime against nature. Gentlemen, I will show you where this defendant learned this detestable and damnable practice. Can I not say that you may take the case of a sailor, or a man who has been in the penitentiary for a period of five years, six months and 18 days, and common experience will teach you that they will practice this detestable crime.' "

We have copied from these bills at length in order to treat them together. It will be seen, that the court excluded some of said argument, and perhaps the major part, from the consideration of the jury, after it had been made. The remarks of the district attorney, however, as contained in the last bill number 6, were not excluded as we understand, from the consideration of the jury; but the court attempts to justify the same on the ground that the defendant's counsel had chal-

lenged the district attorney to explain how he had obtained his information as to the commission of the crime and what that information was. A reference to the bill of exceptions shows that appellant's counsel in alluding to this matter was within the record, and he used the record to show that the girl must have told a falsehood when she told no one prior to the arrest of appellant about the offense. Of course his argument was a challenge to the district attorney to answer his proposition from the record, certainly not outside of the record. The court's explanation in this regard, in our opinion, fails to justify the district attorney in going beyond the record in his response. The rule limits argument to the facts in evidence, and these can be used for any legitimate deduction. Ordinarily cases will not be reversed for improper argument, unless such argument was excepted to, and the exception overruled, and in that event, as a general proposition, appellant can only complain when he has requested an instruction to the jury to disregard such argument and that has been refused by the court, and he has also excepted thereto. Of course, this rule is not of universal application, and there may be argument of such an inflammatory character, as would authorize this court to interfere without the refusal of a requested instruction on the subject and exception taken. Smith v. State, 5 Texas Ct. Rep., 372.

It will also be noted in this connection that, in the trial of rape cases, in which the minds of the jurors are easily inflamed and excited, that it is the peculiar duty of the court to see that in the argument, all safeguards provided by law are rigidly complied with. No clap-trap or sharp practice should be permitted by counsel for the State; no improper means should be resorted to, to prejudice the minds of the jury against defendant in the remotest degree; no remarks should be made by counsel for the State which are not fully warranted by the evidence. Matters not in evidence should not even be alluded to in argument, when such matters might possibly prejudice the minds of the jury against defendant. Gazley v. State, 17 Texas Crim. App., 267; Bryson v. State, 20 Texas Crim. App., 566; Johnson v. State, 27 Texas Crim. App., 163; Nalley v. State, 28 Texas Crim. App., 387; Smith v. State, 68 S. W. Rep., 995.

It will be seen from the first of these bills on the subject of the district attorney's argument, that in combating the testimony of appellant's wife, as to what prosecutrix told her, to wit: "That John did not do anything to me; somebody else put up a job on him,"—that counsel departed from the record and alluded to the Jay Owens case, and the Draper case (both noted cases of rape in Williamson County), in which he claimed that similar defenses had been set up. This perhaps, of itself, though not warranted as these cases were not in evidence, would not cause reversal. However, in the next bill, in endeavoring to explain how it was that the grand jury knew of the case and took cognizance of it before the State's witness had divulged the same to any one, according to her evidence, the district attorney proceeded to suppose a case as to

how this information could have been obtained by the grand-jury, without regard to any development thereof by the prosecuting witness. He said: "Suppose there had been a lot of stealing going on out there where the defendant lives; and suppose that the stolen property was being concealed by some one out there in the defendant's neighborhood; suppose that this stealing was being done by Sugar Carlisle, Dave Brown and John Hamilton, and somebody was receiving and concealing the stolen goods for them, can you think of any better man for the officers to watch than the defendant? Suppose that Forney Chamblee knew of this stealing, can't you see a reason for the defendant to want to get rid of Forney Chamblee?" This reference of the district attorney in his argument, not only personated certain known parties in Williamson County, which the bill shows were indicted by the grand jury for theft at that term, but directly connects appellant with either the theft, or the receipt of stolen property, and suggests that the officers, in watching him had seen appellant under suspicious circumstances with the little girl, without anything in the record to support him; here was a direct suggestion of the district attorney that the defendant was either a thief in regard to said stolen cotton, or was the receiver of the same. Of course, if the State had undertaken to go into this matter by the introduction of witnesses, the court would not have permitted it to be done, much less does it occur to us that the court was authorized to permit this insidious suggestion, on the part of the State of appellant's complicity in such other offense. And again, without any evidence whatever in support of his argument, the district attorney is shown to have characterized appellant, as a bestial and brutal character. He is shown to have suggested to the jury, by a supposable case, that appellant had been in the habit of having carnal intercourse with prosecutrix, either in the natural way, or had committed sodomy with her, and even went so far in his assertions of this, as to tell the jury where he had learned the practice; that he had been in the penitentiary for a period of five years, six months and eighteen days, and must have learned it there. Bearing in mind that there was no evidence whatever of this, and that none could have been introduced, it simply demonstrated how the district attorney in this case, by his suppositions, in which he personated defendant, attempted to evade the law, which he must have known did not authorize him in the first instance to put appellant's character in evidence as to such matters. It occurs to us that this was an improper method of getting before the jury, the idea that appellant was a thief, and engaged in cotton stealing; and appellant was caught up with as to this particular crime, because of his connection with said theft of cotton, and that the State adopted this mode of telling the jury that appellant was a beastial character, and had been in the habit of debauching this little girl for a long time, and in a most brutal manner. It occurs to us that such conduct, even though the court instructed the jury to disregard such argument, would be cause for reversal. So much of this character of argument, was calculated to thoroughly poison the

minds of the jurors against appellant, as a man of the most base and vicious character; and not only tend to his conviction, but also to increase his punishment. Under the circumstances, it was impossible for the court to withdraw the dagger and heal the wound inflicted at the same time. Rutherford v. State, 67 S. W. Rep., 100. A part of this argument, as explained before, was permitted to remain with the jury on the ground, as the court says, "because appellant's counsel had challenged the district attorney to explain how the State had obtained this information, as to the commission of the crime." We have shown that this challenge could only refer to a legitimate response, and was not in our opinion, an invitation of appellant to go outside the record and bring in matters not in evidence before the jury. No matter that, in the opinion of the district attorney, this court may have been in error in confining proof of rape cases to the transaction then being tried (except under peculiar circumstances), it was not competent for him to thus ignore the decisions of this court. It was certainly not competent for him to attempt to evade the law by getting before the jury in the course of his argument, other and distinct transactions or crimes. Fair trial by jury is the bulwark of our free institutions, and the courts as its guardians are pledged to maintain its purity and integrity, and it will not be permitted that a citizen charged with one offense be tried for another, much less will it be tolerated that other offenses de hors the record may be lugged into the argument to the prejudice and injury of defendant.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*