## PAT. SMITH v. THE STATE.

### No. 4111. Decided October 14, 1908.

### Rehearing Granted March 20, 1909.

**1.—Burglary—Charge of Court—Insanity—Burden of Proof.**

Where upon trial for burglary the defense was insanity, the court correctly charged that the law presumes the defendant to be sane, and the burden rests on him to show by a preponderance of the evidence the facts constituting mental disorder or insanity, and there was no error in refusing requested charges to the effect that if the evidence of the defense showed insanity, that then the burden shifted to the State.

**2.—Same—Charge of Court—Diseased Condition of Mind.**

Where upon trial for burglary the court charged upon the issue of insanity that if the defendant did not know the result of the nature of the act he was doing, or if he knew, that he did not know he was doing wrong, etc., there was no merit in the contention that insanity, is itself a diseased condition of the mind and not a result of such diseased condition, which contention was based on the court's charge that insanity was created and produced by a diseased condition of the mind.

**3.—Same—Argument of Counsel—Charge of Court.**

Where upon trial for burglary the State's counsel in his argument said that he wanted a verdict of guilty because he did not want the jury to set a precedent for turning people loose on a plea of insanity, and defendant's counsel would thereupon be pleading insanity for everybody charged with crime, and that the jury might as well tear down the courthouse and burn the court's docket; that they should convict defendant, and if they wanted to recommend executive clemency to come to State's counsel and he would help to get the defendant pardoned, the same was reversible error, although the defense did not request .special charges to have all this language withdrawn from the jury, and the court did instruct the jury to ignore with reference to some of it.

**4.—Same—Question of Fact—Kleptomania.**

Where upon trial for burglary the defense was kleptomania, a species of insanity, and there was conflict in the testimony between the State and the defense upon the issue, the question was one of fact for the jury.

Appeal from the District Court of Wood. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Stafford & Geddie,* for appellant.—On question of argument of counsel: Lancaster v. State, 36 Texas Crim. Rep., 16; Young v. State, 19 Texas Crim. App., 543; Crow v. State, 33 Texas Crim. Rep., 264.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—The appellant was indicted in the District Court of Wood County, Texas, for the offense of burglary. On trial he

was found guilty as charged, and his punishment assessed at confinement in the penitentiary for two years.

The facts show without dispute that appellant sometime in September, 1906, entered the store of I. G. Bromberg & Company, in the town of Mineola, at night, and took therefrom a lot of merchandise of various kinds. This was not seriously disputed in the testimony, and the general fact of the entry by appellant and the taking by him of the goods is fixed substantially beyond any doubt. The defense was that appellant at the time of the burglary was suffering from such character of mental disorder or disease as rendered him incapable of distinguishing between the right and wrong of the act in question and this insanity was that form known as kleptomania, which is defined as an irresistible impulse to steal. This issue was submitted to the jury by the court in the charge: "Among other defenses made in this case is insanity created and produced by a diseased condition of the mind—Every man is presumed to be sane until the contrary appears to the satisfaction of the jury trying him—He is presumed to entertain, until this appears, a sufficient degree of reason to be responsible for his acts and to establish a defense on the ground of insanity it must be proven by a preponderance of the evidence that at the time of committing the burglary (if you have found he did) the defendant was laboring under such defect of reason, from disease of the mind, as not to know the nature or quality of the act he was doing, or if he did know that, he did not know that he was doing wrong—that is, that he did not know the difference between the right and wrong as to the particular act charged against him.

"You are to determine from the evidence in this case the matter of insanity, it being a question of fact controlled, so far as the law is concerned, by the instructions herein given you.

"Now, if the defendant has shown by a preponderance of the evidence that at the time of the alleged burglary the defendant was laboring under such defect of reason, from disease of the mind, as not to know the nature or quality of the act of burglary as herein defined, or if he did know that, he did not know he was doing wrong—that is, that he did not know the difference between the right and wrong as to the particular act charged against him, you will acquit the defendant upon the defense of insanity." In addition to this charge, counsel for appellant requested the court to give the following special charge:

"Gentlemen of the jury, you are further charged that in order for the defendant to be guilty of burglary in entering the storehouse of I. G. Bromberg & Co., if you find he did so enter said house, he must have been moved by, and must have entered for the specific purpose of committing the crime of theft; and if he entered the said house without the specific intent, at the time, of committing the crime of theft, as the crime has been defined to you in the main

charge, then he will not be guilty. And in this connection you are further charged that though he may have entered the said house, but at the time of making the entry, if he did so, he was suffering from any character of mental disorder or disease that rendered him incapable of distinguishing between the right and the wrong of the act, or, in other words, rendered him incapable of forming and following a sane intent to commit the crime of theft, then he will not be guilty and you will acquit.

"You are further charged that kleptomania, which is defined as an irresistible impulse to steal, is, when it arises from a diseased condition of the mind, recognized as a species of insanity, · or a manifestation of insanity, and the person suffering from kleptomania, arising from a diseased condition of the mind, would not be capable of forming the specific intent to steal as the crime has been defined by the statute.

"You are further charged in connection with the above propositions that while the defendant is supposed to have been sane at the time of the entry into the house, if he did so enter, still, if you find from the evidence that the defendant was suffering from any mental disorder prior to and at the time of the commission of the offense, if he did it, then the presumption of his sanity would be overcome, and it is the duty of the State to show by the evidence, beyond a reasonable doubt, that the defendant was sane enough, at the time of making the entry, if he did so, to form the specific intent to steal, or, in other words, to know the difference between the right and the wrong involved in his act." We think the latter clause of this charge, if not, indeed, other portions of it, was erroneous. Analyzed, it is to the effect that while in law the appellant is supposed to have been sane at the time of entering the house, yet if the jury found from the evidence that he was suffering from any mental disorder prior to and at the time of the commission of the offense, this would overcome the presumption of his sanity, and that it is the duty of the State to show by the evidence beyond a reasonable doubt that the defendant was sane enough at the time of making the entry to form the specific intent to steal. The vice and fallacy of this charge, as we conceive, is that it in effect, in its last analysis, instructs the jury that while the presumption of law is that defendant is sane, yet if the defendant shows any form of insanity or mental disorder that then the burden shifts to the State. The vice of this position is that if the evidence shows and same is credited by the jury, that appellant is insane, he is entitled to be acquitted, and it would be error to instruct the jury that insanity, being shown by the defendant, that any burden thereupon devolves upon the State. The true rule is stated and better stated in the charge of the court. That where defendant is arraigned charged with an offense, the law presumes him to be sane and the burden rests upon the appellant to show by a preponderance of the evidence, facts constituting mental

disorder or insanity. With this instruction the jury is in position to pass intelligently upon the matter in issue. We think the special charge should not have been given.

Complaint is made of that portion of the general charge of the court which reads as follows: "Among other defenses made in this case is insanity created and produced by a diseased condition of the mind." It is complained that insanity is itself a diseased condition of the mind, and not a result of the diseased condition of the mind, and this definition was calculated to and did ·mislead the jury to the prejudice of the defendant's interests in that it left the jury to infer that the defendant might have a diseased condition of the mind and yet not be insane. We think this complaint not substantial for the reason that under the instructions of the court taken altogether the test was made as to whether or not the appellant did or did not "know the nature or result of the act he was doing, or if he did know that he did not know he was doing wrong"—that is, he did not know the difference between the right and wrong as to the particular act charged against him.

As further ground for reversal appellant complains of the objectionable language used by the district attorney in his closing address to the jury. It appears by bill of exceptions that among other things, the district attorney made to the jury the following remarks: "I want a verdict of guilty in this case, because I do not want you to set a precedent in this county for turning people loose on a plea of insanity. If you turn this defendant loose, then those lawyers, like Stafford & Geddie, will be pleading insanity for everybody that is prosecuted, and if you are going to turn this defendant loose, you had just as well tear down your courthouse and burn your docket." Exception was taken to this language, but no charge was requested from the court withdrawing or correcting same. We have frequently held that where the remarks of prosecuting attorneys in argument were excepted to but no charge in respect to them is asked, no error is presented. The only exception to this rule is in a case where the remarks of the prosecuting attorney are of such grave character as obviously to prejudice· appellant's case before the jury. Lancaster v. State, 36 Texas Cr. Rep., 16; Locklin v. State, 8 Texas Ct. Rep., 204; Powell v. State, 70 S. W. Rep., 218; Fredericson v. State, 44 Texas Crim. Rep., 288, 70 S. W. Rep., 754; Smith v. State, 44 Texas Crim. Rep., 137, 68 S. W. Rep., 995; Robbins v. State, 47 Texas Crim. Rep., 312, 83 S. W. Rep., 690; Taylor v. State, 50 Texas Crim. Rep., 560, 100 S. W. Rep., 393; Davis v. State, unreported. We do not think in the absence of a request to disregard the remarks above quoted that they are of ·such gravity, or so obviously calculated to injure appellant as to justify under the above decisions, a reversal of the case. It is also complained that in the course of his argument the district attorney used the following language: "Convict this defendant, and if you want

to recommend executive clemency—if you want him pardoned—come to me and I will help you get him a pardon." Touching this language counsel for appellant requested the court to instruct the jury as follows: "You will not consider the language used by the district attorney in his closing speech wherein he said: 'Convict this defendant and if you want to recommend executive clemency—if you want him pardoned—come to me and I will help to get him pardoned,' as such argument was improper." This requested charge was given. It is not shown by the bill in what connection the sentence complained of was used or what else was said in connection therewith. The language is consistent with what we can easily conceive to have been the position of counsel for the State—that is, that the evidence showed his guilt; that they should not be swayed by sympathy, nor governed by the testimony alone of appellant's relatives as to his insanity; that the facts justified a conviction making it their duty to convict and justified the appeal of State's counsel for a conviction with the additional statement that if they afterwards thought appellant entitled to executive clemency, he would join them in such application. The case substantially differs, we believe, from the case of Crow v. State, 33 Texas Crim. Rep., 264. In that case the following language was used: "Now, gentlemen, if you acquit this defendant (pointing his finger at him) you set free the foul murderer of an innocent young girl, and the law can never lay its hands on him again; but if you should convict him, and in doing so should by mistake convict an innocent man, then he has his right of appeal, and the Court of Appeals will reverse the case and give the defendant a new trial, and no injury will be done." These remarks were objected to by counsel for defendant in that case and on objection, the court trying the case said he did not know whether the language was improper or not. In that case it does not appear whether a request was made for instructions to the jury to disregard the argument or not. Much importance also seems to be attached to the fact that in said case an innocent girl had been assassinated on her bed and that it was natural and proper for the jury to be disposed to convict the perpetrator of this most bloody and unnatural murder, and under the circumstances would not be inclined to acquit, though there might be some doubt of guilt. Again, importance is attached to the fact that the court stated in the presence of the jury that he did not know whether the remarks were improper or not and that under the circumstances of that case the remarks of the district attorney in connection with the statement of the judge in relation thereto, were calculated to injure the rights of appellant. In this case on request the jury were promptly instructed that the remarks complained of were improper and the jury should not be influenced thereby. In view of the fact of the fragmentary portion of the argument mentioned and that the bill of exception contained no additional showing of the connection in which they

were made, the charge of the court withdrawing same, we can scarcely believe, they were of sufficientlv grave character as to justify us in reversing the case.

The next ground to be considered is the sufficiency of the evidence to support the verdict. There was testimony given by R. J. Smith, the father of appellant, Will Smith, his brother, Arch Alexander, his brother-in-law, and Ernest Smith, his uncle, to certain facts as to the disposition and mental capacity of appellant on which the alleged insanity is based. No other witness was produced by appellant, except certain physicians and experts touching his mental capacity and Prof. B. A. Stafford, a teacher by profession, who lives and had lived at Mineola several years. It appears from the testimony of appellant's relatives that he had a severe attack of typhoid pneumonia when very small; that he was very irritable; that he was given to falling asleep almost anywhere; would frequently leave his work and go away from home for two or three days, and when returning he would be unable to give an account of his whereabouts during this time; that his mind did not seem to be developed, and that he could never be made to realize the difference between right and wrong; that he had for years been in the habit of stealing things, including tools, plows, ropes, rubber hose, and a number of other things, and when found with same seemed to know or care nothing about them and would evidence no shame and would not use the articles stolen after he had them in his possession. It was developed on cross-examination, however, that appellant engaged in various kinds of manual labor; that he worked at a saw mill for several months as a ratchet setter, fired the engine sometimes, and that setting ratchets and firing engines were very responsible positions; that the ratchet setter has to be very apt and accurate; that he has to notice and observe figures. It also appears that appellant had been away from home—to Dallas, and probably elsewhere, at work; that he earned during a part of this time as much as $1.50 a day; that he was a tolerably good machine man; that at one time he remained at such work in Dallas for two or three months; that this was as long as two or three years before the burglary. It also appeared that appellant made his own trades and bought his own clothing. Two physicians, Dr. D. A. York and Dr. E. W. McCammish, both testified with more or less definiteness that basing their opinion on the testimony given by the other witnesses in the case that they were of the opinion that appellant was so mentally unsound as to be incapable of recognizing the right or wrong of the act charged against him. It will be noticed that while he had resided in Mineola all his life, where he had worked for some considerable time, that no witnesses not related to him were produced upon the trial to testify as to his mental unsoundness. We can well understand how the jury would have attached much importance to this fact. While the testimony of appellant's relatives make a strong showing of insanity, the

jury in passing on this question must and naturally would attach some importance to this fact, and still greater importance, no doubt, to the fact that other persons who must have known appellant, and who, from their acquaintance with him, would have had some opportunity for observation, were not produced. The law presumes and presumed appellant sane. Just what weight of testimony is required to overturn this presumption, it may be difficult in every case to determine. The jury who heard the evidence were not convinced that the legal presumption was rebutted and disproved by the testimony produced. The learned district judge, who tried the case and heard the testimony, and had opportunities for observing the witnesses, their manner and appearance on the witness stand, has overruled appellant's motion; nor can we see from the record that he was in error in so doing. We do not feel that as presented we should interfere.

Finding no error in the proceedings of the court below, it is ordered that the judgment of conviction be and the same is hereby affirmed.

*Affirmed.*

ON REHEARING.

March 20, 1909.

RAMSEY, JUDGE.—The argument filed in this case by counsel for appellant has convinced us that the disposition heretofore made of the appeal was erroneous, and that the argument of counsel for the State was such a grave invasion of the rights of appellant and so violative of the rules of fair discussion as, under the facts, not only to justify but require a reversal.

As stated in the original opinion, the appellant made what seems to us to be a very strong showing of insanity. The facts of the burglary were proven beyond doubt. The only defense for all practical purposes was that of insanity. Therefore, it was of the highest importance that this issue should have been, as it was, fairly submitted to the jury, and that in the discussion thereof there should have been no such departure from the rules of fair debate as would have illegally imperiled or weakened the defense. The particular matter we have in mind is, perhaps, not as fully stated in the original opinion as may seem desirable. The State's attorney made the statement to the jury, as set out in the bill, as follows: "I want a verdict of guilty in this case, because I do not want you to set a precedent in this county for turning people loose on a plea of insanity. If you turn this defendant loose, then these lawyers, like Stafford and Geddie will be pleading insanity for everybody that is prosecuted, and if you are going to turn this defendant loose you had just as well tear down your courthouse and burn your docket." Counsel for the defendant excepted while the district attorney was

making said remarks on the ground that same were out of the record and were unfair to the appellant and were prejudicial to his cause, but the bill recites the court did not stop the district attorney, nor in any way interfere with the argument being made by him, nor rebuke him.   Appellant's counsel requested a charge withdrawing the first sentence of the above remarks, and instructing the jury that the same were improper.   There was no instruction requested in respect to the remaining part of the language above quoted.   The portion in respect to which the instruction related was not of a grave character, and no instruction was requested in respect to the only portion of the argument that could, as we believe, in the nature of things, have prejudiced appellant's cause.   The bill further recites that shortly after the use of the language above complained of and while the district attorney was continuing his address to the jury and continuing the line of argument as set out in his remarks above quoted, that among other objectionable remarks made to and in the hearing of the jury as an inducement to them to render a verdict of guilty in this case, the following statement: "Convict this defendant, and if you want to recommend executive clemency—if you want to pardon—come to me and I will help you get him pardoned." It is further recited that at once appellant's counsel objected and excepted to this speech on the ground that same was an argument outside of the record and prejudicial to appellant's cause and that the court failed to stop the district attorney, or say anything to him or to take any notice of said language or of the appellant's objections thereto, except to turn to appellant's counsel, and in a low tone tell him to prepare a special charge embracing the objectionable language and he would give the charge to the jury.   A charge was prepared and given by the court.   In approving this bill of exceptions the court allows the same with the statement that when the language last above quoted was complained of, he was writing his charge and when counsel for appellant called his attention to it, the district attorney at once began another line of argument.   It is contended by counsel for appellant that in the light of the entire record, this argument was so obviously hurtful and prejudicial as that notwithstanding the instruction given by the court, the judgment should be reversed.   It is urged, and such seems to be the fact, that this statement was not provoked by anything said by them, and the further statement seems clear, that it was out of the record and highly improper.   So, the question recurs, was it of such gravity as, in the light of the entire case, obviously or reasonably to have prejudiced appellant's cause?   Construing it in the light of the former statement that he did not wish the jury to set the precedent of acquitting defendants on the ground of insanity, it was susceptible to the construction of a plea for a conviction not on the ground that appellant was guilty, but for fear of the precedent and that to induce, if not coerce, the jury into rendering a verdict of guilty, he

holds out to them the promise to aid in securing a pardon. In this case the jury gave the appellant the lowest penalty known to the law. This was some evidence that the issue of insanity must have been seriously considered. May not the speech of counsel for the State have induced an agreement on a verdict of guilty by holding out to the jury the hope, whether true or false, that he would aid in securing a pardon, and that as the chief law officer of the State such aid would be effective? Under the precedents which we have carefully examined, we believe in the light of the entire record, that we can not but hold, on further reflection, that this argument was violative of the rules of fair discussion, and probably, if not certainly, hurtful and injurious to the rights of appellant. In the recent well considered case of McKinley v. State, 52 Texas Crim. Rep., 182, Judge Davidson discusses a matter somewhat similar to this, in which he uses the following language: "In making his closing speech the county attorney used the following language: 'Gentlemen of the jury: I want you to convict this defendant on the evidence in this case. It is true he testifies in his own behalf that he did not sell whisky to the prosecuting witness, but the prosecuting witness says that he did, and it is true the prosecuting witness is a negro, but I would believe the negro before I would believe a man like the defendant, who has time and again paid the penalty for the violation of the people's local option law, and goes manifestly without any principle around over the country boot-legging whisky in open violation of our local option law; and that is the kind of a man that is being tried before you.' The bill recites these remarks were not supported by the evidence in the case; that they were immaterial and irrelevant, outside of the record, and were erroneously recited by the county attorney. Exception was reserved. It is further shown that the court instructed the jury not to consider such remarks, but it is claimed that such instruction did not withdraw the prejudice created thereby from the minds of the jury. There was no evidence in the record that appellant had been previously convicted for violations of the local option law, nor to the effect that he had been boot-legging whisky over the country. Appellant had not put his character at issue. Permitting attorneys for the prosecution to dwell in argument on the character of a defendant when not in issue, in a way calculated to prejudice him before the jury, is error. See Turner v. State, 39 Texas Crim. Rep., 322; Pollard v. State, 33 Texas Crim. Rep., 197. Nor is vituperative and abusive argument permissible, and a conviction obtained in this manner is unlawful, and where the record on appeal shows such was permitted to prejudice the accused before the jury, the Appellate Court should not hesitate to set it aside. See Crawford v. State, 15 Texas Crim. App., 501; and Parks v. State, 35 Texas Crim. Rep., 378. And it is error for counsel in argument to state facts not in evidence. See Tillery v. State, 24 Texas Crim. App., 251; Orman v. State, 24

Texas Crim. App., 495; Clark v. State, 23 Texas Crim. App., 260; Robbins v. State, 47 Texas Crim. Rep., 312, 11 Texas Ct. Rep., 560; Bell v. State, 56 S. W. Rep., 913; Harris v. State, 17 Texas Ct. Rep., 815; Harris v. State, 50 Texas Crim. Rep., 411; 17 Texas Ct. Rep., 270, 70 S. W. Rep., 218; 9 Texas Ct. Rep., 813; and White's Code of Crim Proc., pages 498, 500 and 501, for collation of authorities. In our opinion the statements in the argument of the closing speech for the State were of such character that the conviction ought not to be permitted to stand. Usually the instruction of the court to the jury to disregard unwarranted remarks by counsel will be regarded sufficient to prevent a reversal, but where they are of a very damaging character and in cases that inflame or have a tendency to inflame the public mind, a different rule obtains."

This was a case of misdemeanor. This is a felony case. See also Puryear v., State, 50 Texas Crim. Rep., 454; Taylor v. State, 50 Texas Crim. Rep., 560; Stevison v. State, 48 Texas Crim. Rep., 601, and Davis v. State, 114 S. W. Rep., 366. The reports of this court show how frequently we have been compelled to reverse cases for the improper argument of counsel for the State. Why they will persist in such improper argument, it is difficult to conceive. We have no doubt in this case that counsel entertained the sincere conviction of appellant's guilt and that his use of the vigorous language complained of was due to his zeal and founded in his fidelity to the interest of the State. But however much such zeal, and however much such fidelity should be applauded, counsel for the State should always remember that in every criminal case they are bound and committed by every suggestion of duty and by every obligation which can bind and affect them to confine their argument to a fair discussion of the law and the facts of each case. We think on further reflection that we were in error in this matter in the original opinion and that justice demands and our duty makes it a pleasure to acknowledge the error and to set aside and hold for naught our former judgment of affirmance.

The motion is granted and the judgment of conviction set aside and the cause remanded.

*Reversed and remanded.*