## Tom Sue v. The State.

### No. 3829. Decided November 6, 1907.

#### 1.—Murder—Preliminary Statement to Jury.

Where upon trial for murder defendant's attorney, who was permitted to make a preliminary statement to the jury before introducing his testimony, proceeded in an argumentative manner, there was no errorr in sustaining the State's objection thereto.

#### 2.—Same—Evidence—Motive of Witness.

Upon trial for murder, there was no error in sustaining the State's objection to a question by defendant to a State's witness whether some persons interested

in the prosecution had tried to influence the State's witness to swear falsely, as this question was not in proper form, and too general.

**3.—Same—Uncommunicated Threats.**

Upon trial for murder there was no error in rejecting uncommunicaed threats of deceased and others, as at that time the defendant had not set up self-defense.

**4.—Same—Evidence—Clothing of Deceased.**

Where upon trial for murder, the State's theory. was that deceased was shot in the back and his clothing set on fire, there was no error in introducing in evidence the clothing of deceased which tended to show that fact.

**5.—Same—Bill of Exceptions—Immaterial Testimony.**

Upon trial for murder there was no error in sustaining the State's objection to testimony offered by the defense which was not shown to be pertinent in the trial of the case.

**6.—Same—Evidence—Moral Turpitude—Witness.**

On trial for murder there was no error in permitting the State on cross-examination to show that the witness had been indicted some twenty years ago for criminal assault upon a female, on the ground that such assault as contended by the defense did not show moral turpitude. Defendant did not make the objection on the ground that the testimony was too remote, which would have been good.

**7.—Same—Evidence—Animus—Declaration of Defendant.**

On trial for murder there was no error to admit the declaration of defendant in evidence to the effect that deceased had beat him out of a girl, which remark was made shortly before the homicide.

**8.—Same—Bill of Exceptions—Evidence.**

On trial for murder there was no error in ruling out the testimony of de-defendant's witness as to certain parties who were seen near the scene of the homicide the evening before, and the movements of said parties, inasmuch as the bill of exceptions'did not show in what way said testimony could be material, or how it was connected with the homicide.

**9.—Same—Evidence—Conclusion of Witness.**

Upon trial for murder there was no error in rejecting certain testimony which .called for a conclusion of the witness.

**10.—Same—Evidence.**

There was no error in admitting testimony, which though weak in its relevancy, could not have injured defendant in the trial of the case.

**11.—Moral Turpitude of Witness—Evidence.** .

Upon trial for murder there was no error in permitting the State to show that defendant's witness had been indicted for murder twenty-five years ago, and also for criminal assault upon a female, to show moral turpitude, defendant's counsel not objecting to the testimony on the ground that it was too remote.

**12.—Same—Argument of Counsel.**

Where upon trial for murder the argument of State's counsel was a legitimate deduction from the evidence, there was no error.

**13.—Same—Animus of Witness—Evidence.**

On trial for murder there was no error in showing the. animus of one of the defendant's witnesses against the prosecution by his declaration to another State's witness to help him, defendant's witness, to send one of the State's witnesses to the penitentiary.

**14.—Same—Charge of Court—Limiting Testimony.**

When testimony, in a trial for murder, could not have been legitimately or rationally used for any other purpose than that for which it was used, there was no error in failing to limit the same to that purpose.

**15.—Same—Charge of Court—Exceptions too General.**

Where upon appeal from a conviction of murder in the second degree the exceptions to different charges on murder and manslaughter did not point out any error in such charge, but such exceptions were general, they could not be considered on appeal; besides there were no errors in said charges.

**16.—Continuance—Bill of Exceptions.**

In the absence of a bill of exceptions to the overruling of a motion for continuance, the matter cannot be considered on appeal.

**17.—Same—Practice on Appeal—Assignments of Error—Motion for New Trial —Bill of Exceptions.**

No complaint of the charge of the court, or ruling of the court can be considered on appeal under article 723, Code Criminal Procedurre, unless the same is embodied either in a motion for a new trial or in a bill of exceptions; and assignments of error that are not thus placed in the record cannot be considered on appeal.

**18.—Same—Murder in Second Degree.**

Where the evidence, in an appeal from a conviction of murder in the second degree, showed a very cruel and wanton murder, the verdict will not be disturbed.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*M. D. Carlock* and *Barnwell & Eberhart,* for appellant.—On question of introducing clothes of deceased in evidence: Cole v. State, 45 Texas Crim. Rep., 225; 75 S. W. Rep., 530; Melton v. State, 47 Texas Crim. Rep., 451; 83 S. W. Rep., 822; Crenshaw v. State, 48 Texas Crim. Rep., 77; 85 S. W. Rep., 1147. On question of declaration of defendant; Earles v. State, 47 Texas Crim. Rep., 559; 12 Texas Ct. Rep., 267; Foster v. State, 51 Texas Crim Rep., 77. On question of moral turpitude of witness: Williford v. State, 36 Texas Crim. Rep., 425; Fitzpatrick v. State, 37 Texas Crim. Rep., 30; Louis v. Bell, 40 S. W. Rep., 747. On question of limiting testimony: Coker v. State, 35 Texas Crim. Rep., 57. On question of uncommunicated threats: Howard v. State, 23 Texas Crim. App., 265; Stewart v. State, 36 Texas. Crim. Rep., 133; Ex parte Taylor, 33 Texas Crim. Rep., 536; Wilson v. State, 17 L. R. A., 654.

*F. J. McCord,* Assistant Attorney-General, and *Warren & Briggs,* for the State. On question of moral turpitude and credibility of witness: Carroll v. State, 32 Texas Crim. Rep., 434; 24 S. W. Rep., 100. On question of limiting testimony: Wilson v. State, 37 Texas Crim. Rep., 382; 39 S. W. Rep., 373; Winfrey v. State, 56 S. W. Rep., 919; Blanco v. State, 57 S. W. Rep., 829.

BROOKS, JUDGE.—This is a conviction for murder in the second degree, the punishment assessed being twenty-five years confinement in the State penitentiary.

Appellant's bill of exceptions, No. 5, complains that the court refused to permit his counsel to make a statement to the jury of the facts that he expected to prove on the trial of this cause. Appended to the bill of exceptions is the following qualification: "Defendant's attorney was permitted to make a statement to the jury and began, after he had made a few remarks, the State objected to him proceeding because the statement was argumentative and the court being of the opinion that it was and could serve only the purpose of prejudicing the jury in favor of defendant, the court sustained the objection." There is no error in the ruling of the court.

Bill of exceptions, No. 7, complains that while a witness was on the stand for the State, appellant propounded to him the following question: "Is it not true that some person, or persons interested in the prosecution of this defendant has tried to get you to testify falsely against him?" The bill is allowed with this explanation: "The State objected to the question on the ground that same was too general, did not indicate what person had tried to get him to swear falsely, and at this time, by an inspection of the statement of facts, it will be seen that no intimation had been made by any witness, that Warren had anything against defendant or motive to wrong him." The bill shows that if permitted to testify, the witness would have stated that the witness, Warren, father-in-law of the deceased, Lon Brice, had tried to get the witness and had urged him to testify against this defendant. If the question had been asked in proper form the testimony would have been admissible. Under the form of the question, the court's ruling to the effect that the question was too general, was proper.

After the witness, West Bailey, had testified for the State that he was present and saw the difficulty; that he knew Knox Smith, Lon Brice and Archie Warren, appellant's counsel asked the witness if he had not heard Knox Smith and Lon Brice, the deceased, and Archie Warren, or either of them, make threats against this defendant to take his life or to do him serious bodily injury. If permitted to testify, appellant insists, the witness would have stated that he had heard Knox Smith, Lon Brice and Archie Warren make serious threats against appellant. The bill is approved with this statement: "At the time this question was asked, no witness had testified that Knox Smith assaulted defendant and the court did not know that defendant's defense would be, 'self-defense' against an attack by Knox Smith and deceased. In fact but one witness swore to a theory of self-defense and that was defendant, and his testimony was after West Bailey was on the stand and defendant did not again offer this testimony after it had been made known to the court through the testimony of a witness, that any such defense would be made." Clearly under the explanation of the court, the ruling was correct. Uncommunicated threats are not admissible, unless the evidence shows that the defendant claims some species of self-defense at the time of offering the said threats.

Bill of exceptions, No. 13, complains that the clothing of the deceased were introduced in evidence. This is very pertinent, because of the State's insistence that the deceased was shot in the back and his clothing set on fire and the clothing evidenced the fact that they were set on fire.

Bill of exceptions, No. 29, shows that while the defendant's witness, Williford, was on the stand, he testified that he was an ex-sheriff of Upshur County, and that he was still assisting the sheriff in the discharge of his duties; that on the 20th day of December, 1907, he walked into a restaurant in the town of Gilmer and saw the said Knox Smith and a party whom he afterwards learned was Jule Smith in the restaurant, and that the said witness, Knox Smith, introduced the witness, Jule Smith, as his brother, but by another name than Jule Smith, and that the said witness, Williford, asked him if this was Jule Smith, stating that he wanted him as a witness in this case, and that the said Knox Smith then and there stated that it was not Jule Smith, but was his brother who recently came out here from Tennessee, and that all this occurred in the presence and hearing of Jule Smith and Knox Smith. After hearing the testimony the court excluded the same from the consideration of the jury, to which appellant excepted. Appellant insists that said testimony was material as tending to account for the absence of the witness, Jule Smith, and it was material as tending to contradict the witness, Knox Smith, who had testified that he had no such conversation with the said Williford. The defendant at this time showed that the witness, Jule Smith, was the material witness in this case and that process had been issued for him and that he had not been found and could not be found in Upshur County, and that about ten days before the trial of this case the witness, Knox Smith, had immediately left his home and had gone about thirty miles. And that Knox Smith, in connection with the prosecuting witnesses, West Bailey and J. S. Warren, had been engaged in the conversation with the witness, Jule Smith, and that the witness, Jule Smith, had just left the country about ten days before.

This bill does not show in what way this testimony was pertinent in the trial of this case. If Jule Smith was wanted by the sheriff and the party talking to the sheriff, or ex-sheriff, at the time, was Jule Smith, and the witness, Knox Smith, denied that it was Jule Smith, then certainly Jule Smith denied it also by his silence, at least, and it would not prove any material fact in this case, to show that they did lie about it. It would not tend to show that prosecuting witness, Knox Smith, ran him away, but would be an impeachment upon an immaterial issue.

The State was permitted, over appellant's objection, to ask the witness, Joel Screws, if it was not a fact that he had been indicted in Wood County about twenty years ago for criminal assault upon a girl. Appellant objected because the same is irrelevant, immaterial and was an attempt to discredit the witness and that if the witness had been indicted for criminal assault, that it was not a character of offense that shows

moral turpitude.   Over appellant's objection the same witness was asked
if he had not been indicted in Bosque County for rape on a girl, and the
same objection made to the testimony.   These objections are not legal
ones under the decisions of this court.   These offenses do involve moral
turpitude.   Appellant does not make the objection that the testimony
is too remote.   We have heretofore held that where a party was in-
dicted for an offense more than twenty years ago, that it was too remote
and ought not to be admitted.   But this objection is not made in the
bill of exceptions before us.

The State placed Lige Furr upon the stand and he testified that while
passing the home of the deceased's wife's father, in company with appel-
lant, he remarked to appellant, "Here's where my girl used to live and
Lon Brice, deceased, beat me out of her," and the defendant at the same
time remarked, "Yes, and by God he beat me out of her too."   This
declaration, made a short while before the homicide, may not show
animus on the part of appellant to the deceased, but it is a circum-
stance to indicate such.   This being true it was admissible.

Appellant complains that the court refused to permit Annie Cox, his
witness, to state that she saw three men standing near the road she was
traveling, whom she identified as Knox Smith, West Bailey and some
other man, and that one man had a gun and when they saw her, they
went off in the direction of Cypress Creek; she afterwards told her hus-
band about seeing the men on said occasion.   Defendant's counsel then
asked her when and where it was she first told her husband about it.
She testified she saw the men the evening before the homicide in going
from her home to her father's home, and the same being the home of the
defendant.   This bill is defective in not showing how and in what way
said testimony could be material.   There is no testimony in the record
showing that these parties, at that time, attempted to injure or wound
anyone; and how it was, or could be connected with the subject of the
homicide, is not made to appear in the bill.   We can not look through a
voluminous record to ascertain whether the testimony is material; when
the same is rejected by the court, the bill must show on its face its
materiality.

Bill of exceptions, No. 27, complains that while the witness, Luney
Hudson, was on the stand for appellant and had testified that he
was at the dance on the evening of the difficulty between Lum Corbit
and Lon Brice, where the homicide occurred and just before the homi-
cide, defendant's counsel then asked the witness to state what occurred
at the difficulty between Lum Corbit and the State's witness, Charlie
Brice.   Upon objection by the State, the witness was not permitted to
answer, but the bill says, if so permitted he would have stated that dur-
ing the difficulty between Lum Corbit and Charlie Brice, that the ladies
who were attending the dance ran out of the house, screaming and
hollering, down to the field, and called on the men to protect them
from the drunken crowd at the dance; that Ed Corbit, Knox Smith,
West Bailey, Lum Corbit and Charlie Lindsey were there at the time,

and they were the ones referred to by the ladies when they called witness Luney Hudson to protect them from the drunken crowd. This testimony is not admissible but called for a conclusion of the witness as to whether they were the ones referred to by the ladies.

While the State's witness, Alex Brice, was upon the stand, as shown by bill of exceptions, No. 14, on rebuttal the State asked the witness if the witness, Will Lemmons, for the defense, had said on the 8th or 9th of January, 1907, at Perryville, Texas, to him and Pennington that the State in this case was up against the hardest proposition they had ever been, as the defendant's attorney, M. D. Carlock, and his uncle, John Nixon, and he, Lemmons, were working for the defendant in this case, and that this was a hard proposition for the State to go up against; and to which appellant objected, because same was irrelevant and immaterial and was not in any way calculated to throw any light upon this case, because the same was only an opinion of the witness and it was an undertaking to impeach a witness upon an immaterial matter. The court overruled the objection and the witness made the statement above detailed. While the relevancy of the testimony is weak if even pertinent at all, yet, it could not have injured appellant in the trial of this case.

Bill of exceptions, No. 31, shows that the State was permitted to ask the witness, W. L. Lemmons, if he had been indicted for murder. Appellant objected to the question on the ground that it is not a crime carrying with it moral turpitude. The witness answered that he had been so indicted about twenty-five years ago and was acquitted. This is not a proper objection to this testimony. We think murder does involve moral turpitude. Appellant's counsel as stated above, does not object to the testimony on the ground that it is too remote. In the shape the bill is in, there is nothing requiring our review.

Bill of exceptions, No. 32, shows that the defense's witness, Joel Screws, was asked if he had not been indicted in Wood County, about twenty years ago, for criminal assault. The same objection was made to this testimony. Certainly this offense involves moral turpitude, although too remote to be inquired about under the decisions of this court, but the latter objection was not made. The same character of testimony was elicited, as shown by bill, No. 33.

The District Attorney's argument was objected to wherein he used the following language: "The sweater of Lon Brice shows scorches caused by the pistol of this assassin," meaning and referring to the defendant. Again, "You should avenge the death of Lon Brice by convicting this murderer," meaning and referring to the defendant. These statements were clearly warranted by the evidence in this case; from the State's standpoint, the appellant was an assassin and a murderer. These conclusions are irresistibly drawn from the State's testimony and were legitimate deductions and statements from the evidence. Special counsel made the following statement in his argument: "On the night of December 25, there was committed in Upshur County near Perry-

ville, the·most dastardly and unprovoked murder I ever heard of, and
it was done by this defendant." From the State's standpoint, as above
stated, this statement was clearly warranted by the evidence. Further-
more, there was no special charge tendered the court until the jury had
retired to consider of their verdict.

Bill of exceptions, No. 43, shows that while the witness, Dr. Shields,
for the State, was on the stand, the following questions were propounded
to him by the State: "State whether or not the witness, John Daniels,
a witness for the defendant, had told him, Shields, in the town of
Winsboro about six months ago, that if he, Shields, would assist him,
Daniels, in testifying that the malt corn hauled to Shields' mill by the
witness Daniels, belonged to the witness, J. S. Warren, that they would
send the old scoundrel, meaning him, Warren, to the penitentiary."
Appellant objects to the same because the same was irrelevant and im-
material, and was an attempt by the State to impeach the witness,
Daniels, upon an immaterial issue, and had no connection whatever with
this case and throws no light whatever upon the same. This testimony
was pertinent in that it showed animus on the part of the defense's wit-
ness, Daniels, against the State and favoritism on his part to the ap-
pellant. Bill of exceptions, No. 44, complains of the same matter.

Bill No. 45 complains that the court erred in his failure and refusal
to limit the testimony of the witness, Alex Brice, wherein he testified
that the defendant's witness, Will Lemmons, had said to him on the
8th or 9th of January, 1907, at Perryville, Texas, that the State in this
case is up against a hard proposition and as the defendant's attorney
and his uncle, John Nixon, and he, Lemmons, were all working for the
defendant in this case, and that this was a hard proposition for the
State to go up against. This testimony could not possibly have been
used for any ·other purpose. Therefore, it was not necessary to limit
the same. See Wilson v. ·State, 37 Texas Crim. Rep., 382; 39 S. W.
Rep., 373; Moseley v. State, 36 Texas Crim. Rep., 580; 37 S. W.
Rep., 736; Winfrey v. State, 56 S. W. Rep., 919; Blanco v. State, 57
S. W. Rep. 829. When testimony could not be legitimately or ration-
ally used for any other purpose, it is not error to refuse to limit same
for that purpose.

Various and sundry assignments of error were made by appellant in
his motion for a new trial, to the court's charge as follows: "The
court erred in the eighth paragraph of his charge to the jury, which
is as follows: 'In order to warrant a verdict of murder in the first
degree, malice must be shown by the evidence to have existed; that is,
the jury must be satisfied from the evidence, beyond a reasonable doubt,
that the killing was a consummation of a previously formed design to
take the life of the person killed, and that the design to kill was
formed deliberately, with a sedate mind, that is, at the time when the·
mind of the person killing was self-possessed and capable of contem-
plating the consequences of the act proposed to be done. There is,
however, no definite space of time necessary to intervene between the

formed design to kill and the actual killing; a single moment of time may be sufficient; all that is required is that the mind be cool and deliberate in forming its purpose and that the design to kill is formed.' "

"The court erred in the ninth paragraph of his charge to the jury which is as follows: 'When the evidence satisfies the mind of the jury, beyond a reasonable doubt, that the killing was the result of a previously formed design by the defendant to kill deceased, and that the design was formed when the mind was calm and sedate and capable of contemplating the consequence of the act proposed to be done by him, and such killing is further shown to have been unlawful and done with malice, then the homicide is murder in the first degree, and your verdict should be rendered accordingly.' "

That the court erred wherein he undertook to define to the jury what was implied malice as will more fully appear from page 5 to 6 of the court's charge, as follows: "Implied malice is that which the law infers from or imputes to certain acts, however suddenly done; thus, when the facts do not establish express malice beyond a reasonable doubt nor tend to excuse or justify the act under the law of justifiable homicide hereinafter given you in charge, nor tend to reduce the offense to manslaughter under the law of manslaughter hereinafter given in charge, then the law implies malice and the killing is murder in the second degree."

That he erred in all that part of his charge which attempts to define manslaughter as will more fully appear by the court's charge on page 6 and 7 and in bill of exceptions, No. 37, which is as follows: "Manslaughter is voluntary homicide committed under the immediate influence of sudden passion, arising from an adequate cause, but neither justified nor excused by law. By the expression under the immediate influence of sudden passion is meant, first, that the provocation must arise at the same time of the commission of the offense, and that the passion is not the result of a former provocation. Second, that the act must be directly caused by the passion arising out of the provocation; it is not enough that the mind is merely agitated by passion arising from some other provocation. Third, the passion intended is either of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering it incapable of cool reflection."

These complaints of the charge can not, under the rules of this court, be reviewed because the complaint is too general. How, or wherein the charge is wrong is never pointed out. To copy a charge and say the court erred in giving that charge, is not sufficient under the rules of this court. Furthermore, we will say that we have very carefully read the charge and do not believe there is any error in same, even if the exceptions were well and pointedly made.

We find no bill of exceptions in this record to the overruling of the voluminous motion for a continuance. In the absence of a bill of exceptions to the overruling of the motion, this court can not review same.

We wish here to again repeat what we have frequently said, that it is

a useless consumption of paper and an unnecessary incumbrance of the record to put an assignment of errors in a record sent to this court. Article 723 of the Code of Criminal Procedure limits our consideration to assignments in the motion for a new trial and to bills of exceptions. We can. not take cognizance of any assignment of errors that is not thus placed in the record. Therefore, we again urge the bar of Texas, not to incumber the records sent to this court with any more assignments of errors. No complaint of the charge of the court, or ruling of the court can be considered by us, unless said complaint is embodied either in a motion for a new trial or in a bill of exceptions.

The evidence in this case, from the State's standpoint, shows a very cruel and wanton murder of the second degree, and the deliberateness with which it was done would clearly have warranted the jury in inflicting a higher penalty.

Finding no errors in the record, the judgment is affirmed.

Henderson, Judge, absent.

*Affirmed.*

[Motion for rehearing overruled December 4, 1907, without written opinion.—Reporter.]