| 22 | 185 |
| 30 | 565 |
| 22 | 185 |
| 33 | 100 |
| 34 | 313 |
| 22 | 185 |
| 36 | 495 |
| 36 | 638 |

[No. 2277.]

I. L. STONE *v.* THE STATE.

1. DISORDERLY HOUSE—EVIDENCE.—The defense interposed to a prosecution for keeping a disorderly house was that the accused had no connection with the establishment or its business, and no interest in its for-

tunes, save as a creditor of the actual proprietor. In order to support
this defense, the accused offered in evidence certain promissory notes, se-
cured by mortgage on the furniture and table ware of the establishment,
and executed by one B , who he alleged was the actual proprietor. The
trial court excluded the proposed evidence as irrelevant and immaterial.
*Held*, error; and that the instruments were admissible as tending to show
that B., and not the accused, was the keeper of the house.

2. SAME—CHARGE OF THE COURT.—It is the settled doctrine in this State
that the character of a house alleged to be a disorderly house may be
established by proof of its general reputation as such, and that such
proof is sufficient to warrant a conviction for keeping a disorderly house.
It is, however, the province of the trial court only to admit such evidence,
and it then becomes the duty of the jury to determine whether the evi-
dence is sufficient to sustain the charge. Instruction, therefore, that
"proof of the general reputation of the house is sufficient to establish
the character of the house," while correct in the abstract, was erroneous
as being a charge upon the weight of evidence.

3. SAME.—Upon a trial for keeping a disorderly house, the jury were in-
structed as follows : "If the jury believe from the evidence that the de-
fendant did, in Hunt county, Texas, on or about the fourth day of
May, 1886, either alone or in connection with another, keep a disorderly
house, or was in any way concerned in keeping a disorderly house, you
will find him guilty, and assess his punishment," etc. *Held* correct, be-
cause keeping and being concerned in keeping a disorderly house
amounts to one and the same thing within the meaning of the law.

4. SAME.—Omission to charge the law of circumstantial evidence is not error
when the case of the State does not rest solely upon that character of
evidence.

5. SAME—ACCOMPLICE TESTIMONY.—See the statement of the case for evi-
dence which, clearly disclosing the complicity of the main State's witness
in the keeping of the house, demanded of the trial court a charge upon
the law relating to accomplice testimony.

6. SAME—PRIVILEGE OF COUNSEL—See the opinion *in extenso* for an extract
from the concluding address of the counsel for the State to the jury, *held*
to be a palpable abuse of the privilege of argument, and sufficient of
itself to demand a reversal of the conviction.

APPEAL from the County Court of Hunt.   Tried below before
the Hon. J. S. Sherrill, county judge.

The conviction in this case was for keeping a disorderly house
in Hunt county, Texas, and the punishment assessed against
the appellant was a fine of five hundred dollars.

E. C. Johnson was the first witness for the State.   He testified
that he lived in Greenville, Hunt county, Texas.   He knew the
general reputation of the house known as the old Coffey hotel.
From that reputation it was a house of public prostitution on the

fourth day of May, 1886. Witness saw several women at the house at the time mentioned. Witness had no recollection of·· ever having seen the defendant there.

W. B. Houston testified, for the State, that he was constable· of the Greenville precinct in Hunt county, Texas. On or about. May 3, 1886, the witness went to the old Coffey hotel house to. arrest three women for vagrancy. Up stairs in that part of the house once kept by John Coffey as a hotel, the witness saw the defendant. He told the witness to prepare bail bonds for the three women and that he would make them. Witness prepared and the defendant signed the three bonds. The general reputation of that house on May 4, 1886, was that of a house of prostitution or whore house.

R. A. Hill testified, for the State, that he was engaged in the sewing machine business in Greenville. He rented a machine to. defendant at a dollar and a quarter per week. Defendant told witness to take the machine to the old Coffey house, and witness. did so. Defendant paid witness the rent until the removal of the women, since which time the women have paid the rent. Defendant once said that it was likely that either he or the· women would buy the machine. The old Coffey house, on or about May 4, 1886, was reputed to be a house of public prostitution. Several witnesses who followed the witness Hill testified· that the reputation of the house was that of a whore house.

Officer Joe Mercer testified, for the State, that between April 1, and April 15, 1886, he went to the Coffey house to arrest four· women for vagrancy. Defendant gave witness a draft to pay the fines of the women. The draft was drawn payable to Jacob. Behrens, and endorsed by Behrens to the witness. The Coffey house consisted of two parts. In the one story part Jacob. Behrens kept a saloon. The other part, reputed to be a whore house, was a two story building connected with the other by a. hall. Witness had frequently seen the defendant in both parts of the said house. He had often seen. him draw beer and cut lunch for himself in the saloon. Witness had seen other parties. do the same thing, and had done so himself.

Josie Spence testified, for the State, that she had been an inmate of the Coffey house. She came from Denison to Greenville. about two months before this trial, to visit her daughter, who. was an inmate of the said house. Shortly after witness's arrival, the defendant and her daughter went to Denison together,. and her daughter brought back the witness's furniture and placed.

it in the Coffey house. The defendant, under a sham contract, employed the witness and the other women in the house. He paid them three dollars per week each, but immediately took the money back. The defendant was "boss" of the hotel part of the Coffey house, and the witness and the other women paid him for the privilege of staying there. They remained in the said house from about April 10 until late in May. Witness had been prosecuted and fined for prostitution both in Denison and Greenville, and cases for that offense were still pending against her in Greenville. Defendant held a mortgage on witness's furniture for twenty dollars and seventy-five cents. Witness never told Jessie Thompson that she would go into court and convict defendant unless he surrendered the said mortgage. She did not tell Jessie Thompson that she would testify against defendant and Jake Behrens if they refused and failed to pay her lawyer's fees. Witness made no contract with Jake Behrens to pay him five dollars per week board.

Ott Reeves testified, for the State, that he was in the grocery business in Greenville. Defendant had a running account with his, witness's, firm. Some time before this trial, the witness delivered a bill of crockery ware at the Coffey house, upon the order of the defendant, and charged the bill to the defendant. Witness did not know whether or not the bill had ever been presented to the defendant or paid by him. He had never disputed it.

W. A. Sansom testified, for the State, that he had often seen the defendant sitting about the table in the dining room of the Coffey house. On or about May 1, 1886, the defendant told witness that he could run a whore house in Greenville and beat the officers.

Tom Cole testified, for the State, that, on April 15, 1886, he was employed to cook at the Coffey house by a man named Charley. Shortly afterwards, defendant told witness not to quit cooking, that he would see witness paid. One Shreeve, a bar keeper for Behrens, paid the witness his money. Witness did not know from whom Shreeve got the money.

Attorney Collins testified, for the State, that on or about May 1, 1886, Behrens sent for witness to call at the Coffey house and arrange with him for his defense upon a charge of keeping a disorderly house. While talking with Behrens, he was called by defendant, who told him that he, defendant, was the man to talk

to about the case; that Jake was an ignorant Dutchman and knew nothing about it. The State closed.

Jacob Behrens testified, for the defense, that he rented the premises known as the old Coffey hotel from F. V. Eude, about. Christmas, 1885. The witness was the proprietor of the entire premises, including both the saloon and hotel part. The witness owed the defendant, and the defendant collected the dues of the women. Witness never collected or received money from either defendant or the women. The witness was alone interested in the business—he had no partner. Witness hired the women as chamber maids. The defendant, who was a grocery merchant, furnished witness with groceries, indorsed for him and loaned him money. Defendant was partly secured by mortgage. Defendant got all the money, but if he was witness's partner, witness did not know it. Witness was under indictment for keeping the Coffey house as a disorderly house.

Mr. Shreeve, bar keeper for Behrens, testified for the defense, that he had nothing to do with the hotel part of the Coffey house premises, and did not know who was the proprietor of that part. Defendant often called at the saloon for money which he claimed Behrens owed him. Witness told defendant that the women owed Behrens, and directed him to collect from the women, which he did, and witness charged the amounts so collected against defendant. Defendant often called for beer, paying for it.

Jesse Thompson testified, for the defense, that he was employed by Behrens to attend bar for him, and worked in the restaurant for a day or two. He frequently asked defendant to watch and attend the bar for him. Defendant did not live at the Coffey house, but frequently slept with witness up stairs in the Coffey house. Josie Spence told witness to tell defendant that if he didn't take her name off the mortgage he held on some property, she would go into court and convict him upon this charge.

J. D. Lasater testified, for the defense, that Behrens bought some furniture from him prior to the arrival of the women. After their arrival he bought some more, for which the defendant became security, selling the same to Behrens for twenty-five per cent advance upon witness's figures. Defendant had stood for other parties who bought furniture from him.

D. W. H. Taylor testified, for the defense, that he was employed in defendant's store. He had often sold goods to

Behrens on credit, and sent them to the Coffey house. That house was reputed to be a whore house.

R. D. Light, a painter, testified, for the defense, that he did some work on the Coffey house. for which Behrens paid him.

Mr. Phelps testified for the defendant, that he was employed in Behrens's bar room in May, 1886. He often saw defendant in the bar, up stairs, in the dining room and kitchen. He had often seen other parties in all of those rooms, except the kitchen. He heard the defendant ordering the cook about the meals. While witness was in Behrens's employ, defendant took two dollars out of the saloon drawer, leaving a check in the place of it.

The motion for new trial raised the questions discussed in the opinion.

*Terhune & Yoakum,* and *R. L. Porter,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. I. The notes and mortgage offered in evidence by defendant, and rejected, were not immaterial or irrelevant. They tended to show that Behrens, and not the defendant, was the keeper of the house. It was error to reject them. (Whart. Cr. Ev., 9 ed., sec. 24.)

II. That portion of the charge of the court which intsructs the jury that proof of the general reputation of the house is sufficient to establish the character of the house is a charge upon the weight of evidence. It is the settled doctrine in this State that the character of a house alleged to be a disorderly house may be established by proof of its general reputation as such, and it has been held that such proof is sufficient to warrant the jury in finding the house to be disorderly. (Morris v. The State, 38 Texas, 603; Sylvester v. The State, 42 Texas, 496; Allen v. The State, 15 Texas Ct. App., 320; Burton v. The State, 16 Texas Ct. App., 156.) While this doctrine may be against the weight of authority, it is the established rule in this State, and we can see no good reason why it should be changed. All the authorities hold that it was competent to prove the character of the house by proving the general reputation of its occupants for lewdness. (2 Bish. Cr. Proc. sec. 113; Whart. Cr. Ev., 260, 261; 3 Greenlf. Ev., sec. 186.) It seems to us that there is no material difference between proof of the character of the house and proof of the

·character of the occupants of the house. The proof of one establishes the other.

But, notwithstanding the paragraph of the charge above referred to is correct in the abstract, it invades the province of the jury. It was the province of the jury to determine the sufficiency of the evidence. It was for the court to admit the evidence, and for the jury to say whether or not it sustained the charge. "It is not for the judge to say what evidence shall be sufficient to warrant the jury in convicting." (Rice v. The State, 3 Texas Ct. App., 451.) This erroneous paragraph of the charge was excepted to at the time of the trial.

III. There is no error in the fourth paragraph of the charge. Under the allegation that the defendant *kept* the house he could be convicted, if the evidence proved that he was in any way *concerned in keeping it.* Keeping, or being concerned in keeping such house, is one and the same thing within the meaning of the law. (Penal Code, Art. 341.)

IV. It was not error to omit to charge the jury the rule as to circumstantial evidence. The case is not one of circumstantial evidence alone. There is direct evidence proving the guilt of the defendant.

V. It was error to not instruct the jury in relation to accomplice testimony. Josie Spence, a material witness for the prosecution, was unquestionably an accomplice in keeping the disorderly house, and she was the only witness who testified directly that defendant kept the house. (Phillips v. The State, 17 Texas Ct. App., 169; Smith v. The State, 13 Texas Ct. App., 507; Howell v. The State, 16 Texas Ct. App., 93; Cook v. The State, 14 Texas Ct. App., 96; Kelley v. The State, 1 Texas Ct. App., 632.)

VI. In his address to the jury, the county attorney used the following language: "This defendant, I. L. Stone, is a contemptible and pusillanimous puppy. He comes into this court with the swaggering insolence of a grocery bully, and pleads not guilty to this charge. During the dead hours of night, while his family were at their humble home shedding tears of regret over the sad downfall of the husband and father, this man, this biped, I. L. Stone, is bedding up with these prostitutes. Had I the command of language to stand here and express my contempt of this thing, this I. L. Stone, I could stand until the dawn of the resurrection day, and then say less than he merits. If I were going to establish a hell on earth, and invade the

realms of darkness for one to supervise it, I would leave there and come back here and take I. L. Stone, for he is a fair representative of the devil."

Such language was uncalled for and highly reprehensible. It was not argument, not a discussion of the evidence. It was a personal and undignified abuse of the accused, such as should never be tolerated in a court of justice. It was calculated to arouse the passions of the jury against the defendant, and to materially prejudice him in the trial. It was such error in the proceedings as would of itself cause a reversal of the judgment. (Ricks v. The State, 19 Texas Ct. App., 308; Cohn v. The State, 11 Texas Ct. App., 391; House v. The State, 9 Texas Ct. App., 567.)

Because of the several errors we have mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*