## Leonard Parker v. The State.

### No. 2450. Decided March 5, 1902.

**1.—Theft of Cattle—Evidence as to Poisoning Dogs.**

On a trial for theft of cattle, it was competent to prove by a witness that he knew certain dogs were poisoned about the time of the theft, and that defendant had confessed to him that he, defendant, had thrown poison into the wayside yard where the dogs lived because he was afraid the dogs would bark at him while he was driving the cows by the house. The testimony was not inadmissible because it showed another offense, it having a direct bearing on the particular offense in this case.

**2.—Same—Erroneous Charges as to Penalty Harmless, When.**

An erroneous charge of the court as to the maximum punishment for cattle theft is harmless and will not constitute reversible error where the jury has affixed the minimum punishment.

**3.—Court's Answer to Questions Propounded by Jury.**

Where the jury after their retirement, propounded to the court the questions, if an opportunity had been offered defendant to offer testimony in rebuttal of the contents of a certain letter, and whether an opportunity was afforded the defense to offer testimony in rebuttal of the contents of the letter, to which the court answered in the affirmative; Held, the court's reply was improper and calculated to impair defendant's rights, since the first interrogatory of the jury referred to defendant's failure to testify. The court should have instructed them, that they were witnesses to the proceedings on the trial, and the court was not authorized to give them any information on the subject inquired about.

**4.—Same.**

In answering inquiries propounded by the jury, the obligation is upon the court not to transgress the rules in reference to giving charges.

**5.—Letter as Evidence.**

Where a portion of the contents of a letter had been eliminated on objection of defendant at the time the letter was introduced in evidence, it was error to permit the jury to consider the letter, including the portion which had been eliminated. The portion admitted in evidence should have been copied, if necessary, for the use of the jury.

**6.—Corroboration of Witness as to Defendant's Confession.**

Where a witness has testified to defendant's confession, and it has not been shown that he has made a previous contradictory statement to that testified to by him, it is not admissible to corroborate the truth of his testimony as to said confession by proof that he had told defendant's father of said confession by defendant. The fact that the witness had contradicted himself on cross-examination, or that he was contradicted by other witnesses as to the other matters, would not authorize this character of testimony.

**7.—Argument of Counsel—Duty of Court.**

See opinion for argument of the district attorney held to be of such improper character (with regard to the cause of mob law) as to require of the court a charge to the jury not to consider the same.

Appeal from the District Court of Wichita. Tried below before Hon. A. H. Carrigan.

Appeal from a conviction of cattle theft; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the theft of two head of cattle from the possession of Trice Farmer, the alleged owner.

The State proved defendant's confession of the theft by one W. G. Hooks, who had charge of the pasture and was looking after the cattle of Walter Parker, the defendant's father. The cattle, consisting of two cows and their calves, were, according to Hook's testimony, put into the pasture by defendant and his brother Roy during Hook's absence; and defendant and his brother had killed the cows in the pasture by cutting their throats. Hooks testified that defendant had also told him that they had thrown poison into Perry Funk's yard and poisoned his dogs, as he was afraid the dogs would bark at them when they passed with these cows. The calves were recovered by Farmer, the owner, and the cows, which were identified, were found dead in Walter Parker's pasture. Hooks testified that he had told Walter Parker, the father, of defendant's confession. The letter of defendant to Hooks, which was introduced in evidence, was as follows:

"Iowa Park, Texas, September 16, 1901.—Mr. Gardner Hooks: Old Friend.—I thought I would write you a few lines concerning business. Father wrote me about the matter that you told him. That is right; I don't care for him knowing it. But write me all the late news about the affair. I can get money to back me if needed. [I was out in town the first two nights and had a good time.] I will write more news next time. Write soon. Your old friend, Leonard Parker."

The sentence in brackets as above, to wit, "I was out in town the first two nights and had a good time," was on objection of defendant, not permitted to be read in evidence. But when the jury asked to have said letter in their retirement, they got the entire letter, including this excluded sentence.

No further statement is required.

*Montgomery & Hughes* and *Mathis & Barwise,* for appellant, filed an able and elaborate printed brief of forty-six pages, only one copy of which is found in the record, and which, owing to want of space, the Reporter regrets he can not reproduce.

*Rob't A. John, Assistant Attorney-General, for the State.*

HENDERSON, JUDGE.—Appellant was convicted of the theft of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

Appellant complains that the court permitted the district attorney to prove by the witness Hooks that Parker had confessed to him about the 2d or 3d of July, 1901, that he had thrown some poison over into

Perry Funk's yard for the purpose of killing his dogs; that he was afraid the dogs would bark at him while they were going by with the cows in controversy; and further, that said witness Hooks was permitted to testify that he knew said dogs were poisoned about the time said Parker stated he threw the poison into said yard. This evidence was objected to by defendant on the ground that the same was testimony to a separate and distinct transaction and offense, which was immaterial and calculated to injure the rights of defendant and prejudice the jury against him, and was not shown to have any connection with the transaction then on trial. While the testimony does show another offense, still it has a bearing on the particular offense charged here against appellant,—that is, he admitted to the witness that he threw poison to the dogs in order to facilitate his theft of the cattle; and in that connection we think it was also competent to prove that the dogs were poisoned about the time alleged.

Appellant objected to the introduction of a certain letter, alleged to have been written by appellant on September 16, 1901, to Hooks, a witness for the State. Inasmuch as this case is to be reversed on other grounds, it is not necessary to discuss the admissibility of said testimony, as no doubt on another trial the predicate will be sufficiently laid for its introduction.

Appellant excepted to the court's charge on punishment, because he placed the maximum at five instead of four years in the penitentiary. The jury fixed the minimum punishment, and, as has been held, the charge did not operate to the prejudice of appellant. O'Docharty v. State (Texas Crim. App.), 57 S. W. Rep., 657; Lovejoy v. State, 40 Texas Crim. Rep., 89.

After the jury had retired, they came into court, and propounded the following interrogatory to the court: "The jury desire to know if an opportunity was afforded defendant to offer testimony in rebuttal of the contents of the letter from Leonard Parker to Bud Hooks?" to which the court answered in the affirmative. They afterwards presented this question to the court: "The jury desire to know if an opportunity was afforded the defense to offer testimony in rebuttal of the contents of the letter from Parker to Hooks?" to which the court replied that he had answered the same question. In connection with this, the court gave a charge, asked by appellant on the same subject, as follows. "The burden is on the State to show defendant's guilt beyond a reasonable doubt, and never shifts to defendant, and, unless the evidence so satisfies the jury, they can not convict because defendant failed to offer any evidence, or the evidence of any particular witness." Appellant insists that the answer of the court as given to the jury was upon the weight of the testimony, and was also tantamount to referring to the failure of the defendant to testify. Unquestionably, if the court had originally instructed the jury that appellant had been afforded an opportunity to offer testimony in rebuttal of the contents of the letter to Bud Hooks, and he had failed to do so, and they would take this as a circumstance against

him, it would have been a charge on the weight of testimony. The statute authorizes the jury to make inquiries of the court, so as to be informed as to any matter of law about which they may be in doubt. Of course, in answering such inquiries the obligation is upon the court not to transgress the rules with reference to giving charges. This does not seem to have been an inquiry on the part of the jury as to a matter of law, but as to the procedure in the course of the trial. If testimony had been offered in rebuttal as to the genuineness or contents of said letter, and had been excluded by the court, or any controversy arose as to such testimony during the trial, the pertinency of the jury's inquiry might be apparent. Aside from the presumption of law that the court was ready at all times to receive testimony tending to solve any issue in the case, it would be impossible for even the court to say that the opportunity had been afforded appellant to rebut the letter or its contents. However, the court told the jury, in response to their interrogatory, that the opportunity had been afforded defendant to rebut the letter or its contents, and the opportunity had also been afforded the defense to do the same thing. Evidently the jury were disposed to weigh the circumstances of appellant's failure to rebut said letter or its contents against him in case he was afforded an opportunity to do so and failed to do it. They doubtless believed he had failed to offer rebutting evidence, and the court informed them affirmatively that the opportunity had been afforded defendant or the defense to offer such testimony. As stated before, if the court had gone so far in its original charge it would have been error; and we do not believe that he was authorized to do more than was proper in his original charge, no matter how strongly urged by the jury. Of course, if the court had given the requested charge alone, the error would have been less apparent; but even that trenches on the weight of testimony. Nor did it cure the vice in the original response of the judge. If the court had simply informed the jury that they were witnesses to the proceedings during the trial and that the court was not authorized to give them any information on the subject inquired about, it would have fulfilled its functions in the matter. We believe the charge as given in reply to the jury's inquiry was improper and was calculated to impair the rights of appellant. It further occurs to us, in connection with the two inquiries addressed to the court by the jury, that the first one referred to appellant's failure to testify, and that they must have so understood it, inasmuch as the second interrogatory was more comprehensive and related to the right of the defense to introduce rebuttal evidence. True, the court in the general charge told the jury not to comment on or discuss appellant's failure to testify, and not to discuss or consider any fact or facts not introduced in the case; still, from the nature and form of the two requests, it is suggested that the first related to defendant's failure to testify. If this was what they meant, then the court informed them that the opportunity had been afforded defendant to testify as to the matter; and

notwithstanding the cautionary charge of the court, they made an inquiry on this subject. Certainly, taking the two requests together, it would bear this construction.

After the jury retired and were considering their verdict, it appears that they returned into court and desired the letter which had been introduced in evidence. In this connection it will be observed, that one clause of the letter, to wit, "I was out in the town the first two nights, and had a good time," had been eliminated therefrom, and was not introduced in evidence; but the letter, including this clause, was handed to the jury. It is shown that this transpired in the absence of counsel, and that appellant, though present, did not consent thereto. The only question is, was the sentence contained in the letter, and which had been excluded, calculated to injure appellant? Evidently appellant objected to this clause for some reason. It certainly had no pertinency to the matter then under investigation, and was properly excluded. By the course adopted it got before the jury, and it is shown that this particular clause was read and commented on by some of the jury. Evidently it was not calculated to benefit appellant, and would, at least, suggest that he was not a boy of high moral character, but, on the contrary, was wild and reckless. The court should have either declined to permit the letter to go into the jury room, or should have had the portion thereof copied which had been admitted in evidence, eliminating the remainder.

It does not occur to us that the testimony of Hooks to the effect that he told Walter Parker, appellant's father, prior to the receipt of the letter from appellant, of the confession that appellant made to him in regard to the theft of the cattle, was admissible. The effect of this testimony was to corroborate Hooks as to the truth of his testimony in regard to the confessions made before the jury. If the State had shown that he had given a different statement as to said confessions than that testified to by him, then it would have been competent to show that he had made a similar statement recently after the confessions were made, and before there was any motive to fabricate his testimony. The fact that the witness Hooks contradicted himself on cross-examination, or that he was contradicted by other witnesses, about other matters, would not authorize this character of testimony. Nor, if the State permitted him to show that he told Matt Hubbard about the confession, would this authorize the State in its turn to show that he also, on another occasion, told appellant's father that appellant had confessed the theft to him. Nor would it make any difference as to the admissibility of this testimony that the letter which was introduced in evidence referred to the matter of this confession, and suggested that his father knew of this matter. None of these things made this testimony admissible.

While R. E. Taylor, district attorney, was addressing the jury, he used the following language: "Gentlemen of the jury, we have what is known as 'mob law' in this country, and in my mind the failure to enforce the law is the cause of mob law. Sometimes jurors acquit a defendant who is guilty, and when the evidence shows he is guilty; and

before they get out of the court yard they say that the reason we have mob law in this country is because the officers fail to enforce the law. And I want to tell you that it is my opinion that it is the failure of the juries to enforce the law and do their duty that causes mob law, and not the officers. The officers in this case have done their duty, and the evidence shows that the defendant is guilty, and if you turn this defendant loose I don't want you to be going around here telling that the officers have not done their duty, and that is the cause of mob law, when it is you." At the time when said argument was made, counsel for defendant came to the judge, who was writing his charge, and asked the judge to stop the district attorney from making said argument, and to reprimand him, and to orally charge the jury not to consider said argument. The court refused to do this, and defendant excepted to the action of the court, and at the close of the argument presented to the judge a special charge to the same effect. Thereupon the court called the district attorney, and asked him if he used the language contained in said special instructions in the presence of counsel of defendant, and he unequivocally denied it, and gave the language as quoted above as his language; and the same coincided with the court's recollection, who refused to give said instruction, because it did not quote the language of the district attorney. We think that the argument used by the district attorney, as given by the court, was improper, and that the court should have given the requested charge; or, if he deemed that not sufficient, that, his attention being directed to the matter, he should have given an adequate charge on the subject.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*