LITTLE v. STATE.   (No. 3602.)

(Court of Criminal Appeals of Texas.   June 23, 1915.   Dissenting Opinion June 25, 1915.)

1. CRIMINAL LAW ☞1037—APPEAL—ARGUMENT OF PROSECUTING ATTORNEY — EXCEPTIONS.

In a prosecution for murder, where the prosecuting attorney's argument, alleged to have been improper, was not excepted to, nor special charges requested that the jury should not consider them, they were not ground for reversal, unless very inflammatory and without basis in the testimony, since remarks that will authorize a reversal when no special charge is requested must be such that their withdrawal, and an instruction not to consider them, would not obviate their harmful effect.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1691, 2645; Dec. Dig. ☞ 1037.]

2. CRIMINAL LAW ☞728—TRIAL—ARGUMENT OF PROSECUTING ATTORNEY.

In a prosecution for murder, where no request was made to instruct the jury not to consider the prosecuting attorney's statements in argument, characterizing the defendant as a bloody assassin, and stating that if the jury turned loose the defendant on the evidence they might as well tear down their courthouse, burn their jail, and throw their statutes into the sea, and where the evidence showed that defendant had walked into a restaurant and shot deceased without warning while he was playing dominoes, the language was not so inflammatory and without basis in the testimony as to call for reversal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1689–1691; Dec. Dig. ☞ 728.]

3. CRIMINAL LAW ☞1037—APPEAL—ARGUMENT OF PROSECUTING ATTORNEY — EXCEPTIONS.

In a prosecution for murder, where the defendant claimed that deceased had been trying to get his wife away from him, a remark of the prosecuting attorney in argument that while such wife worked for him she was a mighty neat little negro woman and a mighty good worker was not prejudicial to defendant, calling for reversal, in the absence of a request for a charge that the jury should not consider it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1691, 2645; Dec. Dig. ☞ 1037.]

4. CRIMINAL LAW ☞938 — NEW TRIAL — GROUNDS—NEWLY DISCOVERED EVIDENCE.

In a prosecution for murder, where a witness, alleged to have newly discovered evidence, might have been procured at the trial by the use of due diligence, and where the evidence of such witness related simply to a fact prior to the homicide, amply proven at the trial, and not disputed by the state, there was no ground for a new trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2306–2315, 2317; Dec. Dig. ☞938.]

Davidson, J., dissenting.

Appeal from District Court, Trinity County; S. W. Dean, Judge.

Doc Little was convicted of murder, and he appeals.   Affirmed.

Poston & Dotson, of Groveton, for appellant.   C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J.   Appellant was convicted of murder, and his punishment assessed at five years' confinement in the state penitentiary.

[1-3] The state's evidence is that appellant walked into a restaurant where deceased, Luke Callahan, Mose Murphy, Oscar Barnes, and Weaver Goodman, were playing dominoes.   The appellant walked into the restaurant, bought a cigar, when he wheeled around and commenced shooting, continuing to shoot until deceased fell, when he walked up to him and shot again, saying: "God damn you.   I done got you."   Deceased was unarmed, and according to the state's evidence made no demonstration whatever.

Appellant testified to going into the restaurant and buying a cigar, when he says, deceased, as he (appellant) struck a match, reached around and pulled Mose Murphy's coat back and made some sort of sign, and then run his hand in his bosom, as he did so, raising up in the chair, when he (appellant) remarked, "You son of a bitch," and began shooting; that he does not know how many times he shot, but he thought, from remarks and threats that had been communicated to him, his life was in danger.   He further testifies that some time prior to this, deceased had been the cause of him and his wife separating.   The record shows they had been separated some six months, and appellant's wife had been cooking for Mr. Campbell during that time and at the time of the homicide, but appellant says that they had agreed to make up and live together again: that he saw deceased, and told him they had made up, and not to bother his wife further, and deceased agreed not to do so. Instead, though, of doing so, when his wife went to visit her father some days before the killing, deceased followed her up there and was seen in her company.   However, the record clearly shows that appellant had met deceased in what is termed the "Commissary Store" since being informed of that fact, and this was not the first meeting when the homicide took place.   No bills were reserved to the introduction of any testimony, no special charges requested, and no exceptions reserved to the charge of the court as given. The only exceptions in this record relate to the argument of counsel for the state.   It appears that counsel said in his address to the jury:

"Gentlemen, what an example it would be to the people of this county for you to return a verdict of not guilty against this bloody assassin. * * * If you turn this man loose on such evidence, you might as well tear down your courthouse, burn your jail, and throw your statutes into the sea. * * * They claim that the dead man broke up defendant's home and had intercourse with his wife.   They have offered no evidence of this but the family of defendant. Could they find no one else that knew of this? I know this:   That while she worked for me, she was a mighty neat little negro woman and a mighty good worker. * * * It is time to call a halt in Trinity county and go to enforcing

the law. It would humiliate me for such a murderer to be turned loose upon the people of the county. No one would be safe. Who knows but that the next time it would be one of you gentlemen or me. I haven't long to stay here, but I have some grandchildren growing up, and for their sakes I'd like to see killing stopped in Trinity county. Gentlemen, the defendant has asked for a suspended sentence. It would be a travesty upon justice, a travesty on law, and a travesty on humanity to suspend the sentence of this murderer and turn him loose on the county."

The court in approving the bills states that no request was made to instruct the jury not to consider these remarks, or any of them, and says, further, in approving some of the bills, that he was not sure the identical language was used, but something like it was said, and which he did not think was improper argument. As we understand it, it has always been the rule in this court that improper argument will not be ground for reversal of a case, unless such argument is excepted to and special charges prepared and presented to the court, instructing the jury not to consider such remarks, unless the remarks are very inflammatory and without basis in the testimony. In the event the court refuses to give the instructions and the remarks are improper, then the case will be reversed. If no request is made to have the jury instructed not to consider the remarks, it is only in cases where the remarks are so improper, hurtful, and harmful that their withdrawal would not cure the error. We do not think the above remarks are of that inflammatory character, and the verdict of the jury evidences the fact, that the passions and prejudice of the jury were not aroused. To term the appellant "an assassin and murderer" is to use strong terms. But if the state's evidence is true he shot deceased while he was sitting quietly at one table playing a game of dominoes, with no thought that death was near, and it was an assassination. The argument that "if they turned appellant loose on such evidence, you might as well tear down the courthouse, burn up your jail, and throw your statutes into the sea," has been frequently held not to present ground for reversal, where no special charge was requested instructing the jury not to consider such remarks. Just and fierce invectives, based upon the facts in evidence and all legitimate inferences therefrom is not discountenanced by the courts. Glascow v. State, 50 Tex. Cr. R. 635, 100 S. W. 933; Tune v. State, 49 Tex. Cr. R. 445, 94 S. W. 231; Choice v. State, 54 Tex. Cr. R. 517, 114 S. W. 132; Vann v. State, 48 Tex. Cr. R. 11, 85 S. W. 1064; Sue v. State, 52 Tex. Cr. R. 124, 105 S. W. 804.

The evidence showed that appellant's wife had been working at Mr. Campbell's for six months immediately preceding the homicide, and his remark that while she worked for him she was a mighty neat little negro woman and a mighty good worker certainly could not prejudice appellant's case. His contention was that his anger was aroused because deceased was trying to take this woman away from him, and one whom he was desirous of getting to live with him again. Certainly these few words of praise of her could not injure him. After carefully reviewing the authorities we have come to the conclusion that the remarks above present no ground for reversal, in the absence of any request that the jury be instructed not to consider them. Remarks that will authorize a reversal when no special charge is requested must be highly inflammatory and hurtful, and be such remarks that their withdrawal and instruction not to consider them will not remove their harmful effect. If they are not of that character, then a request must be made to instruct the jury not to consider them, or they will not present error. We think this the true rule underlying all of our decisions and the rule shown to be practically observed by all the courts, by the citation of authorities in Am. & Eng. Enc. of Law & Prac. vol. 5, p. 297.

[4] The alleged newly discovered evidence is to no new fact, but only one more witness to facts testified to on the trial by other witnesses, and is such that it could have been discovered by the use of due diligence. The witness was not present when the homicide occurred, and his testimony is simply to a fact that occurred prior to the homicide, amply proven and not disputed by any evidence offered by the state.

I am of the opinion the judgment should be affirmed.

PRENDERGAST, P. J. I concur; and it is ordered that the judgment be affirmed.

DAVIDSON, J. (dissenting). Appellant was allotted by the jury five years' confinement in the penitentiary for murder.

I do not care to discuss the facts. Several bills of exception were reserved to arguments of state's counsel. The first bill recites that counsel for the state used the following language:

"What an example it would be to the people of this county for you to return a verdict of not guilty against this bloody assassin."

The second bill shows the same counsel used this language:

"Gentlemen, if you turn this man loose on such evidence, you might as well tear down your courthouse, burn up your jail, and throw your statutes into the sea."

The facts show defendant killed deceased because of adultery with his wife. The third bill shows the same counsel used this language:

"They claim that the dead man broke up defendant's home and had intercourse with his wife. They have offered no evidence of this but that of the family of defendant. Could they find no one else that knew of this? I know this: That while she [meaning defendant's wife] worked for me, she was a mighty neat little negro woman and a mighty good worker."

There was no evidence, recites the bill, of this before the jury. The fourth bill recites that said counsel used this language:·

"Gentlemen, it is time to call a halt in Trinity county and go to enforcing the law. It would humiliate me for such a murderer to be turned loose upon the people of the county. No one would be safe. Who knows but that the next time it would be one of you gentlemen or me. I haven't long to stay here; but I have some grandchildren growing up, and for their sakes I'd like to see killing stopped in Trinity county."

The humiliation of state's counsel is not a reason for conviction of a defendant. He must be tried and convicted upon the law and facts. There are other comments that might be made on these remarks.

Another bill recites this language was used:

"Gentlemen, the defendant has asked for a suspended sentence. It would be a travesty on justice, a travesty on the law, and a travesty on humanity to suspend the sentence of this murderer and turn him loose on the county."

It is unnecessary, in view of the authorities in Texas, for me to discuss the impropriety of the language used. The judge qualifies these bills by stating that appellant did not request a charge withdrawing same from the jury. The judge seemed to be of the impression, as appellant did not request such a charge or such charges, that therefore he was justified in not sustaining the exceptions to the remarks at the time the language was used. Many opinions have been written as to when an argument is improper and when a charge should be requested and when not, and when the language is fatal independent of requested instructions. It is unnecessary for me to review these cases; they are part of the history of the appellate courts in Texas. Some of the language used, and most of it, has been condemned so often by the decisions of this and other courts in this state I deem it unnecessary to discuss them. For a collation of the authorities, see Branch's Crim. Law, § 62; Liner v. State, 70 Tex. Cr. R. 75, 156 S. W. 211; Grimes v. State, 64 Tex. Cr. R. 64, 141 S. W. 261; Johnson v. State, 63 Tex. Cr. R. 50, 138 S. W. 1021; Davis v. State, 54 Tex. Cr. R. 236, 114 S. W. 366; Smith v. State, 44 Tex. Cr. R. 142, 68 S. W. 995, 100 Am. St. Rep. 849; Thompson v. State, 33 Tex. Cr. R. 475, 26 S. W. 987; Clark v. State, 23 Tex. App. 263, 5 S. W. 115; Parker v. State, 43 Tex. Cr. R. 530, 67 S. W. 121; Garrett v. State, 52 Tex. Cr. R. 255, 106 S. W. 389; Smith v. State, 55 Tex. Cr. R. 569, 117 S. W. 966; McKinley v. State, 52 Tex. Cr. R. 182, 106 S. W. 342; Ware v. State, 49 Tex. Cr. R. 413, 92 S. W. 1093; Taylor v. State, 50 Tex. Cr. R. 560, 100 S. W. 393; Jenkins v. State, 49 Tex. Cr. R. 461, 93 S. W. 726, 122 Am. St. Rep. 812; Stone v. State, 22 Tex. App. 192, 2 S. W. 585; Robbins v. State, 47 Tex. Cr. R. 315, 83 S. W. 690, 122 Am. St. Rep. 694.

One of the bills recites that state's counsel made a statement of fact, that is:

"I know this: That while she [meaning defendant's wife] worked for me, she was a mighty neat little negro woman and a mighty good worker."

The bill recites there was no evidence of that fact before the jury. This was a statement of a matter of materiality, and, not being testified, should not have been used or alluded to in argument. Counsel could not testify in a speech; he should have been sworn. His argument should be based on matters properly before the jury, and he should not make statements before a jury of matters not in evidence. If he desires to testify he may do so, but he must do so under oath. Davis v. State, 54 Tex. Cr. R. 236, 114 S. W. 366; Bearden v. State, 46 Tex. Cr. R. 146, 79 S. W. 37; Tillery v. State, 24 Tex. App. 273, 5 S. W. 842, 5 Am. St. Rep. 882; Exon v. State, 33 Tex. Cr. R. 469, 26 S. W. 1088; Weatherford v. State, 31 Tex. Cr. R. 536, 21 S. W. 251, 37 Am. St. Rep. 828; Fuller v. State, 30 Tex. App. 565, 17 S. W. 1108; Hunnicutt v. State, 18 Tex. App. 523, 51 Am. Rep. 330.

Where argument is obviously hurtful and prejudicial, a reversal will follow. Smith v. State, 55 Tex. Cr. R. 569, 117 S. W. 966; McKinley v. State, 52 Tex. Cr. R. 182, 106 S. W. 342; Smith v. State, 44 Tex. Cr. R. 142, 68 S. W. 995, 100 Am. St. Rep. 849. These arguments and statements of state's counsel were so obviously wrong and of such a hurtful nature that this judgment ought to be reversed, although charges were not requested; exceptions were taken at the time, and the court declined to withdraw the remarks from the jury, or to control counsel in his argument. I, therefore, cannot agree to the affirmance of this case, and believe the judgment ought to be reversed and the cause remanded for another trial.