MAT PEARSON v. THE STATE.

No. 4108. Decided June 7, 1916.

Rehearing denied June 23, 1916.

**1.—Robbery—Indictment.**

Where, upon trial of robbery with firearms, the indictment followed approved precedent, the same was sufficient.

**2.—Same—Verdict—Words and Phrases—Charge of Court.**

Where, upon trial of robbery, the court properly charged the jury in case they found the defendant guilty, to assess his term of punishment at not less than five years, the misspelling in the verdict of the word "years" by leaving out the letter "r" did not vitiate the verdict.

**3.—Same—Continuance—Want of Diligence—Immateriality of Testimony.**

Where defendant's application for continuance showed a total want of diligence in that he could have had the witnesses present before the trial was completed, and also showed the immateriality of the alleged testimony, there was no error in overruling the motion.

**4.—Same—Indictment—Robbery—Value—Surplusage.**

In an indictment for robbery it is unnecessary to allege the value of the property taken, as this does not affect the penalty and such allegation is surplusage, and there was, therefore, no error in permitting the State's witness to state the value of the alleged stolen property.

**5.—Same—Charge of Court—Requested Charges—Practice on Appeal.**

Where none of the requested charges were presented to the trial judge at the time required by law, and no reason appeared why they should have been given, the same can not be considered on appeal. Following Ross v. State, 170 S. W. Rep., 305, and other cases; besides the requested charges should not have been given had they been properly presented.

**6.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of robbery by firearms the evidence was direct and positive, there was no error in the court's failure to charge upon circumstantial evidence.

**7.—Same—Argument of Counsel—Practice on Appeal.**

Where the argument of State's counsel was substantially not out of the record or was partly provoked and called for in response to the argument of defendant's counsel, there was no reversible error. Following Mooney v. State, 76 Texas Crim. Rep., 539, and other cases.

Appeal from the District Court of Montague. Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of robbery with firearms; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*W. F. Weeks, W. W. Cook,* and *W. W. Alcorn,* for appellant.—On question of value: Baden v. State, 74 S. W. Rep., 769; Odell v. State, 70 S. W. Rep., 964.

On question of verdict: Wooldridge v. State, 13 Texas Crim. App., 443.

On question of argument of counsel: Davis v. State, 114 S. W. Rep., 366; Bradley v. State, 162 S. W. Rep., 515.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of sufficiency of indictment: Weaver v. State, 52 Texas Crim. Rep., 11; Green v. State, 147 S. W. Rep., 593; Bell v. State, 177 S. W. Rep., 966; Collins v. State, 178 S. W. Rep., 345, and cases cited in opinion.

On question of overruling application for continuance: Pope v. State, 179 S. W. Rep., 874.

PRENDERGAST, Presiding Judge.—Appellant was convicted of robbery with firearms and his punishment assessed at five years in the penitentiary, the lowest authorized by law.

The indictment is in strict accordance with the statute and in the exact form laid down in 2 Branch's Ann. P. C., sec. 2380, p. 1300, and is good against all of appellant's objections thereto. (See the authorities cited by Mr. Branch, p. 1301.)

The verdict of the jury was: "We, the jury, find the defendant, Mat Pearson, guilty as charged in the indictment and assess his penalty at five *yeas* confinement in the penitentiary." As seen, the verdict is in every way perfect, except the spelling of the word *years,* the *r* being left out. No objection to the verdict at the time it was rendered was made, nor to the rendition of the judgment at the time assessing his punishment at five years in the penitentiary in accordance with the verdict. It was first thereafter raised when he filed a motion in arrest of judgment on that account. The charge of the court may and should be looked to in aid of the verdict. (1 Branch's Ann. P. C., p. 332,

for cases.) The charge told the jury in the first paragraph that the punishment might be death or confinement in the penitentiary for any term of *years* not less than five. Again, in submitting the case to them for a finding, he told them that if they found him guilty to assess his punishment at death or confinement in the penitentiary for any term not less than five *years*. From the charge and the verdict, no one could possibly reach any other reasonable conclusion than that the jury intended and actually assessed his punishment at five *years* in the penitentiary. That they misspelled the word *years* as *yeas* under no circumstances could vitiate the verdict.

The testimony clearly showed this state of fact: About 8 o'clock on the night of October 13, 1915, appellant tried to hire Mr. Manly, who ran a service automobile, to drive him out that night two or three miles in the country. Manly asked him what he was going to do out there. Appellant replied that it was none of his business; that he would pay him for it Manly then told him he would not go without knowing what he was going to do out there. After some further parleying appellant told him that there was going to be some bootleggers through the country who were going to camp out there for the night and he wanted to go out there and get the whisky; that he was going to get it. He said: "We'll hold them up and get it." That he was going to play sheriff and tell them that he came after the whisky. He also told Manly then how much whisky there would be—a wagon load, nineteen or twenty cases. Manly refused his services. Appellant then procured Mr. Antrim to haul him out there in his (Antrim's) automobile, agreeing with Antrim where he could be picked up after he started. Antrim picked him up at the place agreed upon and also another man, whom Antrim did not know and who was not identified. Antrim hauled appellant and this man out just past where Charles Hare and George Collins were camped, about two miles out of Nocona, with a wagon load of whisky. After passing them he stopped, turned around and went back opposite the wagon where Hare and Collins had gone to bed. Appellant and his companion got out of the automobile, went to the wagon where these persons had gone to bed, and appellant drew and presented his pistol to them, ordered them up and out of the wagon and into the automobile, with which they complied. He asked them what they had in the wagon, and Hare told him nineteen cases of whisky. Appellant falsely told them he was the sheriff of the county and intended to take them to Montague, the county seat, that night. Hare, the owner of the liquor, and Collins, too, tried to get him to let them hitch up their team to the wagon and take it back into the town of Nocona with them. This was on their direct route to Montague. He refused to permit this, but told him he would himself get a man to put in charge of it, and immediately did, going a short distance and getting another man, not identified, who evidently was one of his pals, and put him in charge of the wagon and team and liquor. Appellant then, with his companion, after forcing Hare and

Collins into the automobile, as stated, got in and ordered Mr. Antrim to drive them to a certain point, which was a mile or more beyond Nocona, towards Montague, passing through Nocona in a circuitous route to prevent being seen, and there had Antrim to stop his automobile, claiming that it had broken down. He then ordered Hare and Collins out of the automobile. He then told them that probably the county attorney would not prosecute them even if he took them to Montague and that he had concluded if they would go on—beat it, and say nothing about the matter, he would turn them loose. They promised, and he turned them loose. On his way back at their instance he had them hauled back a part of the way to Nocona. After Hare and Collins got to Nocona they proceeded on foot to get their loaded wagon and team that night. Before reaching the point where they had been robbed they met appellant coming back in the automobile from the direction where they had camped and saw then either the whole or at least a part of said cases of liquor in the automobile, and appellant then told them that he had left them a little package. After thus meeting appellant, and before reaching where they had camped, they met their wagon and team and the man whom appellant had placed in charge of it, but all of the liquor had been taken. Antrim hauled appellant and his companion and the liquor they had placed in the automobile back to appellant's barn, where they that night secreted said cases of liquor. Some time the next evening the officers searched appellant's barn but at that time found none of the cases of liquor therein. We have not given all the evidence in detail. We regard it as unnecessary. Appellant did not testify. He had his wife and others to attempt to establish an alibi for him by testifying that he was at home the night of this robbery.

Appellant has a bill of exceptions to the court's overruling his application for a continuance. It is very brief, merely stating that the court overruled his application, "which application has been filed in this cause." The bill does not contain the application, or any part of it. We find it in the record. It was based on the absence of said Collins, by whom he expected to prove that he, Collins, could not and would not identify appellant as the party who perpetrated said robbery. The State later produced Collins, who testified to the reverse of what appellant said he would prove by him, and he swore positively in various ways to the identity of appellant as the robber. Another absent witness was Mrs. Johnson, whom he said he had had subpoenaed, as the attached subpoena would show. No subpoena is attached to the motion showing any such thing. He also claimed that she was sick, as shown by the certificate of a doctor attached. No such certificate is attached. He alleged that she would testify that the day previous to the night of the robbery, appellant brought home some whisky and set it down on the porch, where she was washing for him at his house. That a part of this was alcohol which he had secured to doctor his horse's leg with and that she had heard a telephone conversation by

appellant with a veterinary doctor asking whether the alcohol would blister the horse's leg. Another absent witness, Crow, he says he believes, would testify that on several occasions said Hare passed through Montague County with a wagon load of whisky, and that he was unlawfully introducing it into Oklahoma. This evidence by Crow would have been wholly inadmissible. The other absent witness he claimed was Ellis, who was later produced and testified. The court in overruling his application for a continuance tendered appellant attachments for said witnesses. That it was about 3 o'clock in the evening at the time he overruled this motion, and it was not probable that the taking of testimony would begin until the next day, Saturday, nor probably that the case would be concluded before the following Monday, and that the court thought the said witnesses, who were within nine or ten miles from Montague, could be had before the testimony closed, and that he didn't then consider testimony of the claimed witnesses material. Appellant did not avail himself of any writ of attachment offered by the court and does not claim to have had any issued or attempted to be served. To his motion for a new trial, filed some time after the trial was concluded, he attached the affidavit of Mrs. Johnson. She does not swear therein at all that she had ever been subpoenaed as a witness in the cause, nor does she swear that she was sick at the time of the trial, or give any reason why she was not subpoenaed or was not present. She does swear that on the 12th or 13th of October, appellant "brought a box and set it down to the tub where I was washing" and took out two quarts of alcohol, and he said one bottle was to wash his mare's leg with, and asked her if it would take the hair off of it. She asked who prescribed it, and he told her the veterinary doctor, and she told him to phone the doctor, which he did. That she heard appellant say there was more whisky in the box, but she didn't remember just how many he said there was. It will be seen that she did not know what was in the box other than she says he took out two quarts of alcohol. What he said to her would be hearsay, and also the telephone conversation between him and the veterinary doctor would be hearsay; but outside of this, he proved by disinterested witnesses that the day before the robbery he did receive by express some liquor, and by the veterinary doctor that he had advised him to use alcohol on the sore leg of his horse and had a conversation with him over the phone about whether or not alcohol would take the hair off the horse's leg. From the whole testimony, it is clear that the alcohol and two quarts of whisky which were found in appellant's stall the evening after the night of the robbery was the liquor that he had received through the express company the day before and was no part of the whisky he took from Hare. In the first place, under the showing he made, he was wholly lacking in diligence in procuring Mrs. Johnson's attendance. Even if it could be conceded that she was sick on Friday evening when he filed his application for a continuance, it is not shown, nor attempted to be shown, that she was too unwell to have attended the next day

or the Monday following; and the mere fact, which seems to be all that her testimony would have been admissible for, that appellant the day before the robbery set a box down in her presence, of which she did not know the contents, and that he took two bottles of alcohol out of it to doctor his horse with, under the circumstances of this case is of such minor importance the court was not required to grant a continuance or new trial on that account, nor would this court be justified in reversing the case.

In an indictment for robbery, it is unnecessary to allege the value of the property taken. The value does not affect the penalty. Where such an allegation is made it should be treated as surplusage. Winston v. State, 9 Texas Crim. App., 143; Williams v. State, 10 Texas Crim. App., 15; Kelley v. State, 34 Texas Crim. Rep., 413; Williams v. State, 34 Texas Crim. Rep., 531, and many other cases. So the court committed no reversible error when it permitted Collins to testify that the value of the liquor was $195 in Wichita County, he claiming that the value in Montague and not Wichita should have been proven.

Appellant requested several special charges; among them, a peremptory instruction of acquittal; another, that the testimony was insufficient to establish the offense alleged, but if any, swindling, and to acquit; another, that the offense alleged could only be committed by fraudulently taking property away from a person and not by taking the person away from his property and to not consider the testimony of Collins, because it does not show or tend to show the offense alleged but only that of swindling, if anything, and he requested some others unnecessary to mention. None of these charges should have been given. None of them are shown to have been presented to the judge at the time required by the statute, nor is any reason shown why they should have been given. It is merely stated that appellant requested the charge, copying it, and the court refused to give it. Clearly, under the statute, and the many decisions of this court, these matters are not presented in a way that we are required to review them, but if we could, none of them should have been given. (See Ross v. State, 75 Texas Crim. Rep., 59, 170 S. W. Rep., 305, and many other cases since then following that decision. Also Ryan v. State, 64 Texas Crim. Rep., 628; Byrd v. State, 69 Texas Crim. Rep., 35, and many other cases since then following them.)

Clearly, under the law, no charge on circumstantial evidence was called for. Under the testimony, the robbery occurred at the time appellant threw his pistol down on Hare and Collins, commanded them to get out of the wagon and into the automobile, and he himself took charge of the whisky and placed one of his pals in custody thereof. The robbery did not occur when appellant later came back and took part or all of the whisky and put it in the automobile, but even if it did, this was shown by positive testimony. Under no circumstances did the testimony call for a charge on circumstantial evidence.

The only other question raised is several complaints and bills to dif-

ferent short utterances in the argument of the county attorney. There were several of these. We think it unnecessary to detail them. In most instances, we think, the county attorney was not out of the record and had the right to argue as he did. In other instances, the court gave appellant's instructions to the jury, where proper, to disregard the argument, and still in addition the court by his qualification shows that the argument was provoked by and called for in answer to the argument of appellant's own attorneys.

Such matters are frequently before us, as they have been always. In several recent cases we have discussed such matters and the rules applicable thereto, going back to many of the early decisions where the rules were laid down. We think it unnecessary to again discuss this question, but instead will refer to some of these decisions. Marshall v. State, 78 Texas Crim. Rep., 451, 182 S. W. Rep., 1106; Little v. State, 77 Texas Crim. Rep., 339, 178 S. W. Rep., 326; Kinney Miller v. State, 79 Texas Crim. Rep., 9, 185 S. W. Rep., 29; and Judge Davidson's concurring opinion, 45; Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52. It is unnecessary to collate the great number of cases along the same line.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 23, 1916.—Reporter.]