Johnie CORRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 38093.

Court of Criminal Appeals of Texas.

April 14, 1965.

Rehearing Denied May 26, 1965.

Mays & Mays, Dave Miller, Frank D. Coffey, Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Jack Beech, Asst. Dist. Atty., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, twelve years.

Appellant and her husband, the deceased, lived at 2619 Camilla Street in the city of Fort Worth. On December 23, 1963, the witnesses Kenneth Bray and Eddie Miller, employees of the Meissner Funeral Home, went to the address in response to a call, arriving at approximately 7:15 p. m. Upon entering the house they found the deceased sitting in a chair in a semi-conscious condition, with a bullet wound in his forehead. Appellant was present and, in talking to the ambulance attendants, stated that she thought the shot came through the screen and that the deceased had said "he was going to die like President Kennedy did." The deceased was carried to the hospital, accompanied in the ambulance by appellant. On the way to the hospital appellant several times, referring to the deceased, said " 'He always said someone was going to kill him like they did President Kennedy' and also, 'I believe the shot came through the screen or through the front.' "

It was shown that the deceased expired at the hospital on the night in question. An autopsy performed upon the body of the deceased revealed a .22 calibre bullet in the brain. The cause of death of the deceased was shown to be hemorrhage of and injury to the brain, produced by the bullet wound. It was also shown that when the officers went to the scene of the killing, a .22 calibre rifle was found lying across a deepfreeze near the back door of a utility porch.

Appellant was taken into custody at the hospital by the officers around 9 p. m. and carried to the city hall, where she was placed in jail. Shortly before midnight she was taken from jail to the crime laboratory for a paraffin test. During the test, appellant acted as if she were going to faint and was placed on the floor. Between 1 and 2 a. m. she was returned to the city hall and placed in jail.

The following morning (December 24), Detective D. G. Latham saw appellant at the city hall at 9:30 a. m., and questioned her for two hours. Toward the end of the interrogation she was taken to a polygraph room adjacent to the crime laboratory. She was then taken to her home by other officers and returned to the city hall at 2 p. m. Upon her return she was again questioned by Detective Latham and at 2:25 p. m., made and signed a written confession, certain portions of which were introduced in evidence by the state as its Exhibit No. 3.

Before admitting the confession in evidence, a hearing was held by the court in the jury's absence on the question of its admissibility. At such hearing, Detective Latham testified that appellant freely and voluntarily made the statement after having been given the statutory warning.

He further stated that on the day appellant made the statement, Attorney Dave Miller made a request of the witness, around noon at the city hall, to see appellant. At such time, appellant was not at the city hall but had gone with the officers to her home. After she was returned to the city hall, Attorney Miller did not talk to appellant before she made and signed the statement. Detective Latham further stated that at no time did appellant ask to call or see an attorney but after she had

signed the statement and he asked her if she would like to call an attorney she stated that her father would "handle it."

The confession was admitted in evidence by the court over appellant's objection that it "was illegally taken * * * contrary to her civil rights" and she was denied the privilege of consulting with an attorney prior to the taking of the statement. Omitting the formal parts, it reads:

"My name is Johnie Morgan Corry and I live at 2619 Camilla street in Ft. Worth, Tarrant County, Texas. I am 48 years old and I went to the 11th grade in school. I married my husband, William Corry, about three years ago. When we married he moved into my house with me and we have lived there ever since.

"Yesterday afternoon about 1 pm I went across the street to visit some of my friends. I stayed over there about two or three hours. While over there I had about two or three drinks with my friends. I was not drunk. At about 4 P_M_I came home. When I got home my husband was not home but came home about an hour later. When he came home he was in a foul mood and started arguing with me. At that time I went to the back bedroom and got our _22 rifle that was in the corner. The shells were in the dresser drawer and I took them out and put one in the gun. I walked into the kitchen with the gun and saw Bill sitting in the living room in a chair. At that time I aimed the gun at him and pulled the trigger. I ran and put the gun on the deep freeze on the back porch and ranback to where Bill was. When I got back to where Bill was I noticed that his head was bleeding but I didn't know exactly where I had hit him. At that time I called the police, and the ambulance. I make this statement of my own free will without any threats or promises from the police."

Testifying as a witness in her own behalf, appellant related various acts of physical abuse and violence committed upon her by the deceased since their marriage in 1960. She stated that on the day of the killing the deceased came home around 4:30 p. m. in a bad mood; that he went into a bedroom, got the rifle, and returned to where she was and said, " 'I think I am going to kill you and get it all over with.' " When she said, " 'Bill, what are you talking about?,' " he replied, " 'I mean it,' " and then returned to the bedroom and put the gun down. Appellant stated that she then went into the bathroom and returned to the kitchen, where the deceased was sitting in a chair. When she inquired if he was ready for her to start dinner, he replied, " 'No, I'm going to finish the job that I started.' " She related that "Then is when I pulled the trigger, and he kept sitting there," and she then put the gun on the deepfreeze and called the operator for an ambulance.

Appellant swore that she shot the deceased in self-defense and on her cross-examination admitted that the statements in her confession, introduced in evidence by the state, were correct except that portion which read: "At that time I went to the back bedroom and got our 22 rifle that was in the corner. The shells were in the dresser drawer and I took them out and put one in the gun."

The court submitted the issue of appellant's guilt to the jury upon a charge on the law of self-defense.

■ The jury by their verdict rejected the defense, and we find the evidence sufficient to support the conviction.

■ We first overrule appellant's contention that the court erred in admitting the confession in evidence because she was denied the right to counsel, as required by the Supreme Court of the United States.

There is an entire absence of any proof in the record that appellant asked to see or

consult an attorney, which distinguishes the case from Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, cited and relied upon by appellant. See: Miller v. State, Tex.Cr.App., 387 S.W.2d 401, opinion delivered February 3, 1965, where Escobedo v. State of Illinois, was distinguished because no request was made by the accused (Miller) to consult with an attorney before making the confession, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, also cited by appellant, is not here controlling, under the facts, because in that case the incriminating statements were obtained from the accused after indictment, by surreptitious means.

█ Nor do we agree with the contention that the uncontroverted testimony shows that appellant did not freely and voluntarily make the confession introduced in evidence by the state. To the contrary, the state's proof that the confession was voluntarily made was not disputed by appellant in her own testimony. Prince v. State, 155 Tex.Cr.R. 108, 231 S.W.2d 419, cited by appellant, is not, under the facts, here controlling.

We find no reversible error in appellant's bill of exception #1, which presents her complaint to certain jury argument of state's counsel. The bill certifies that during the state's closing argument the assistant district attorney stated, and the following transpired:

"MR. McLEAN: The other ambulance drive(r) said, 'I don't remember what she said on the inside, but I remember going down that she said that he wanted or knew he was going to die like President Kennedy,' and I tell you jurors he did die like President Kennedy, with an assassin's bullet in his head.

"MR. COFFEY: Your Honor, I am going to object to this line of argument as being inflammatory under the circumstances of recent circumstances

[sic], and I am going to request the jury not to consider it.

"THE COURT: Overruled.

"MR. COFFEY: Note our exception.

"MR. McLEAN: Your Honor, may I have my time?

"THE COURT: I will sustain the objection to that part about the President dying from an assassin's bullet. I don't believe it is in the record.

"MR. COFFEY: Your Honor, I am going—

"THE COURT: I will instruct the jury not to consider that part.

"MR. COFFEY: Your Honor, under all the circumstances it is too inflammatory to be removed by an instruction, and I am going to request a mistrial.

"THE COURT: Overruled.

"MR. COFFEY: Note our exception."

█ The statement by the district attorney that appellant said the deceased knew he was going to die like President Kennedy was amply supported by the evidence.

Under the record, any reference to appellant as an assassin was supported by the state's evidence and did not constitute reversible error. Sorrell v. State, 135 Tex. Cr.R. 535, 120 S.W.2d 1058; Little v. State, 77 Tex.Cr.R. 339, 178 S.W. 326; Sue v. State, 52 Tex.Cr.R. 122, 105 S.W. 804.

The judgment is affirmed.

Opinion approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

Appellant again urges our re-examination of Escobedo v. Illinois, supra. We

quote from the first sentence in the opinion prepared by Mr. Justice Goldberg. "The critical question in this case is whether, under the circumstances, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constituted a denial of 'the assistance of counsel'." Appellant, in her testimony, did not intimate that she requested to consult with Mr. Miller or any other lawyer. Mr. Miller did not testify. Escobedo does not apply to the case at bar.

As to the argument, appellant concedes that appellant's statement to the ambulance driver about the deceased's apprehension that he was going to die like President Kennedy was admissible. He concedes that the use of the term "assassin" under the facts was not error, but does contend that the argument which likened the deceased's death to that of our late President was erroneous. We are at a loss to see how the argument could be more injurious than the res gestae statement which appellant concedes was admissible.

Remaining convinced that we properly disposed of this case originally, appellant's motion for rehearing is overruled.